# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NESTOR SAROZA, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CLIENT SERVICES, INC., <br><br> Defendants. | CIVIL ACTION NO.  2:17-cv-03429-MCA-SCM <br><br> **Motion Return Date: March 4, 2019** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RENEWED REMOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

On the Brief:

Daniel JT McKenna
Daniel C. Fanaselle

BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ  08002
T:  856.761.3400
F:  856.761.1020

*Attorneys for Defendant Client Services, Inc.*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   BACKGROUND ................................................................................................. 2

    A.    Factual Background ................................................................................. 2

    B.    Relevant Procedural History .................................................................. 6

III.  ARGUMENT ...................................................................................................... 8

    A.    Applicable Legal Standard..................................................................... 8

    B.    The Federal Arbitration Act Applies .................................................. 12

    C.    There is No Material Fact in Dispute Regarding Plaintiff's Agreement to Arbitrate His Claim.............................................................................. 14

    D.    The Arbitration Provision is Valid and Enforceable............................ 17

    E.    The Arbitration Provision Encompasses Plaintiff's Claim .................. 18

    A.    CSI Has Standing to Enforce the Arbitration Agreement.................... 23

        1.    CSI Can Enforce the Arbitration Agreement Under its Plain Language as an Entity "Connected With" Citibank ................................ 23

        2.    Traditional Principles of Contract Law Allow CSI to Enforce the Arbitration Agreement .......................................................... 26

            a.    CSI Can Compel Arbitration as a Third-Party Beneficiary of the Arbitration Agreement...................................... 27

            b.    CSI Can Compel Arbitration as Citibank's Agent...................... 29

            c.    Plaintiff Is Estopped from Avoiding Arbitration ......................... 32

    B.    The Action Must Be Stayed Pending Arbitration ................................ 33

IV.   CONCLUSION.................................................................................................. 33

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alfonso v. Maggies Paratransit Corp.*,
   No. 16-CV-0363 (PKC)(LB), 2016 U.S. Dist. LEXIS 112708 (E.D.N.Y. Aug.
   23, 2016) ...........................................................................................................................9

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995)..........................................................................................................12

*Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*,
   96 F.3d 88 (4th Cir. 1996) ...............................................................................................20

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011).......................................................................................................9, 22

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986).....................................................................................................19, 20

*Barker v. Citibank (South Dakota), N.A.*,
   No. A:03CA-130JN, slip. op., 2003 WL 25943008 (W.D. Tex. May 30, 2003) ...................21

*Bey v. Citi Health Card*,
   No. 15-6533, 2017 WL 2880581 (E.D. Pa. July 6, 2017) ......................................................21

*Bowen v. First Family Fin. Serv.*,
   233 F.3d 1331 (11th Cir. 2000) ........................................................................................21

*Briggs v. Macy's Inc.*,
   No. 3:16-0902, 2017 U.S. Dist. LEXIS 20530 (M.D. Pa. Feb. 14, 2017) .............................11

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006)..........................................................................................................12

*Carr v. Citibank, N.A.*,
   No. 15-cv-6993 (SAS), 2015 WL 9598797 (S.D.N.Y. Dec. 23, 2015) ..................................21

*Cayanan v. Citi Holdings, Inc.*,
   928 F. Supp. 2d 1182 (S.D. Cal. 2013).............................................................17, 18, 21, 23

*Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*,
   109 F. Supp.2d 1236 (S.D. Cal. 2000)...............................................................................19

*Citibank USA v. Howard*,
   No. 4:02CV64LN, slip. op., 2002 WL 34573997 (S.D. Miss. Aug. 30, 2002) ......................21

*Clarke v. Alltran Fin.*,
No. 17-CV-3330, 2018 U.S. Dist. LEXIS 29011 (E.D.N.Y. Feb. 22, 2018)........25, 30, 31, 32

*Columbia Broad. Sys., Inc. v. Stokely-Van Camp, Inc.*,
522 F.2d 369 (2d Cir. 1975)........................................................................31

*In re Complaint of Hornbeck Offshore (1984) Corp.*,
981 F.2d 752 (5th Cir. 1993) ......................................................................33

*Coppock v. Citigroup, Inc.*,
No. C11-1984-JCC, 2013 WL 1192632 (W.D. Wash. Mar. 22, 2013) .................................21

*Cox v. Midland Funding LLC*,
No. 1:14-CV-1576-LMM-JSA, 2015 U.S. Dist. LEXIS 184176 (N.D. Ga.
June 11, 2015)........................................................................................9

*Credit Acceptance Corp. v. Davisson*,
644 F. Supp. 2d 948 (N.D. Ohio 2009).................................................13, 20

*In re Currency Conversion Fee Antitrust Litig.*,
265 F. Supp. 2d 385 (S.D.N.Y. 2003)......................................................26

*Davies v. Green Tree Servicing, LLC*,
No. 3:14-1711, 2015 WL 3795621 (M.D. Pa. June 18, 2015)................................22

*Dooley v. Federated Law Grp., PLLC*,
No. 16-cv-04703, 2018 U.S. Dist. LEXIS 61086 (N.D. Ga. Jan. 22, 2018)..........................28

*Drozdowski v. Citibank, Inc.*,
No. 2:15-cv-2786-STA-cgc, 2016 WL 4544543 (W.D. Tenn. August 31,
2016) .................................................................................................21

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*,
269 F.3d 187 (3d Cir. 2001)........................................................................27

*Eaves-Leonos v. Assurant, Inc.*,
3:07-CV-18-S, 2008 WL 80173 (W.D. Ky. Jan. 8, 2008)......................................21

*Ellin v. Credit One Bank*,
No. 15-2694 (FLW), 2015 U.S. Dist. LEXIS 153533 (D.N.J. Nov. 13, 2015) ......................22

*Fedotov v. Peter T. Roach & Assocs., P.C.*,
No. 03 Civ. 8823(CSH), 2006 U.S. Dist. LEXIS 11422 (S.D.N.Y. Mar. 16,
2006) ...........................................................................................18, 25, 32

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)..................................................................................17

*Fluor Daniel Intercontinental, Inc. v. Gen. Elec. Co.*,
  1999 WL 637236 (S.D.N.Y. Aug. 23, 1999) ........................................................13

*Garrett v. Margolis, Prtizker, Epstein & Blatt, P.A.*,
  861 F. Supp. 2d 724 (E.D. Va. 2012) ..........................................................25, 28

*Gates v. Northland Grp., Inc.*,
  No. 16-cv-01492, 2017 U.S. Dist. LEXIS 23884 (D.N.J. Feb. 21, 2017) ............25

*Gay v. CreditInform*,
  511 F.3d 369 (3d Cir. 2007).................................................................................22

*Genesco, Inc. v. T. Kakiuchi & Co.*,
  815 F.2d 840 (2d Cir. 1987).................................................................................19

*Gold v. Global Credit & Collection Corp.*,
  No. 1:16-cv-05404-WFK-ST (E.D.N.Y. April 24, 2017) (Kuntz, J.)....................25

*Great W. Mortg. Corp. v. Peacock*,
  110 F.3d 222 (3d Cir. 1997)...................................................................................8

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000).........................................................................................11, 21

*Gregory v. Electro-Mechanical Corp.*,
  83 F.3d 382 (11th Cir. 1996) ...............................................................................19

*Griswold v. Coventry First LLC*,
  762 F.3d 264 (3d Cir. 2014).................................................................................26

*Guerrero v. Equifax Credit Info. Servs., Inc.*,
  No. CV 11-6555 PSG, 2012 WL 7683512 (C.D. Cal. Feb. 24, 2012) ..................21

*Guidotti v. Legal Helpers Debt Resolution, LLC*,
  716 F.3d 764 (3d Cir. 2013).........................................................................10, 14

*Ingram v. Citicorp Credit Servs.*,
  No. 05-2095, 2005 U.S. Dist. LEXIS 47247 (W.D. Tenn. July 8, 2005) .............14

*KPMG LLP v. Cocchi*,
  565 U.S. 18 (2011)................................................................................................9

*Laster v. T-Mobile USA, Inc.*,
  No. 05cv1167, 2013 WL 4082682 (S.D. Cal. July 19, 2013)...............................31

*Lenkowski v. Citibank, N.A.*,
  No. 8:16-cv-03472-CEH-AAS, Dkt. No. 24 (M.D. Fla. April 18, 2017)...............21

iv

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995)............................................................................................................9

*McCormick v. Citibank, N.A.*,
  No. 15-CV-46-JTC, 2016 WL 107911 (W.D.N.Y. Jan. 8, 2016)............................................21

*Mendoza v. Ad Astra Recovery Services*,
  No. 13-cv-06922, 2014 U.S. Dist. LEXIS 1716 (C.D. Cal. Jan. 6, 2014) ........................28, 32

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
  473 U.S. 614 (1985)........................................................................................................23

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)................................................................................................1, 11, 19

*Nicasio v. Law Offices of Faloni*,
  No. 2:16-0474 (WJM), 2016 U.S. Dist. LEXIS 167174 (D.N.J. Dec. 5, 2016) ....................10

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*,
  636 F.2d 51 (3d Cir. 1980)......................................................................................11, 14, 16

*Perry v. Thomas*,
  482 U.S. 483 (1987)........................................................................................................12

*PoolRe Ins. Corp. v. Organizational Strategies, Inc.*,
  783 F.3d 256 (5th Cir. 2015) ...........................................................................................24

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967).......................................................................................................20

*Puleo v. Chase Bank USA, N.A.*,
  605 F.3d 172 (3d Cir. 2010)............................................................................................20

*Sagal v. First USA Bank, N.A.*,
  69 F. Supp.2d 627 (D. Del. 1999), *aff'd*, 254 F.3d 1078 (3d Cir. 2001) ...............................21

*Samenow v. Citicorp Credit Servs., Inc.*,
  No. 16-1346 (CKK), 2017 WL 2303962 (D.D.C. May 25, 2017)..........................................21

*Sesto v. Nat'l Fin. Sys., Inc.*,
  Case No. 04 C 7768, 2005 WL 6519430 (N.D. Ill. Apr. 25, 2005)........................................21

*Shearson/Am. Exp., Inc. v. McMahon*,
  482 U.S. 220 (1987)........................................................................................................21

*Shetiwy v. Midland Credit Mgmt.*,
  959 F. Supp. 2d 469 (S.D.N.Y. 2013).................................................................................22

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ........................................................................21

*Southland Corp. v. Keating*,
465 U.S. 1 (1984) ..........................................................................................22

*Sprayberry v. Portfolio Recovery Assocs., LLC*,
No. 17-cv-00112, 2018 U.S. Dist. LEXIS 78713 (D. Or. Apr. 11, 2018) .............26

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) ................................................................................9, 22

*Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Intern.*,
1 F.3d 639 (7th Cir. 1993) ............................................................................19

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) ............................................................29

*Tantillo v. Citifinancial Retail Servs.*,
No. 12-511 (MLC), 2013 U.S. Dist. LEXIS 21832 (D.N.J. Feb. 19, 2013) ..........22

*Taylor v. Citibank USA, N.A.*,
292 F. Supp. 2d 1333 (M.D. Ala. 2003) ..........................................................21

*Thomas O'Connor & Co. v. Ins. Co. of North America*,
697 F. Supp. 563 (D. Mass. 1988) ................................................................13

*Tractenberg v. Citigroup Inc.*,
No. CIV.A. 10-3092, 2011 WL 6747429 (E.D. Pa. Dec. 22, 2011) ....................21

*Trippe Mfg. Co. v. Niles Audio Corp.*,
401 F.3d 529 (3d Cir. 2005) ..........................................................................11

*United States v. Wadena*,
152 F.3d 831 (8th Cir. 1998) ........................................................................14

*Velazquez v. Midland Funding, Ltd. Liab. Co.*,
No. 1:18-cv-00043-CWD, 2018 U.S. Dist. LEXIS 208046 (D. Idaho Dec. 10,
2018) ..........................................................................................................16

*Ventura v. 1st Fin'l Bank*,
No. C 03-4515 JF, 2005 WL 2406029 (N.D. Cal. Sept. 29, 2005) ....................18

*Voll v. HCL Techs., Ltd.*,
No. 18-CV-04943-LHK, 2019 U.S. Dist. LEXIS 5060 (N.D. Cal. Jan. 9,
2019) ..........................................................................................................16

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989)........................................................................................9

*Ware v. Citigroup Fin. Prods., Inc.*,
No. 1:13-cv-00369-CC, Dkt. No. 37 (N.D. Ga. March 5, 2014) ...........................20

*White v. Sunoco, Inc.*,
189 F. Supp. 3d 486 (E.D. Pa. 2016) ..................................................................24

*White v. Sunoco, Inc.*,
870 F.3d 257 (3d Cir. 2017).........................................................................23, 24

**State Cases**

*Dahl v. Sittner*,
429 N.W.2d 458 (S.D. 1988) .............................................................................29

*Jennings v Rapid City Reg'l Hosp., Inc.*,
802 NW2d 918 (S.D. 2011) ...............................................................................27

*MBNA Am. Bank v Straub*,
12 Misc 3d 963, 815 N.Y.S.2d 450 (N.Y. Civ. Ct, Bronx Cty. 2006)...................13

*Nattymac Capital LLC v Pesek*,
784 NW2d 156 (S.D. 2010) ...............................................................................30

*Providian Nat'l Bank v. Screws*,
894 So.2d 625 (Ala. 2003) .................................................................................14

*Rossi Fine Jewelers, Inc. v. Gunderson*,
648 N.W.2d 812 (S.D. 2002) ...............................................................18, 29, 32

**Federal Statutes**

Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq......................................... *passim*

FAA § 2...............................................................................................................12

9 U.S.C. § 3........................................................................................................33

FAA § 4.....................................................................................................8, 9, 14

Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq* ............. *passim*

FDCPA.......................................................................................................... *passim*

**State Statutes**

S.D. Codified Laws § 54-11-9 ............................................................................18

S.D. Codified Laws § 59-1-1 ...........................................................................................29

**Rules**

Fed. R. Civ. P. 12(b) ....................................................................................................9

Fed. R. Civ. P. 56 ....................................................................................................10, 11

**Other Authorities**

Fedaseyeu, *Debt Collection Agencies and the Supply of Consumer Credit* .................................31

Josh Adams, *The Role of Third-Party Debt Collection in the U.S. Economy* .............................30

Defendant Client Services Inc. ("CSI") respectfully submits this memorandum of law in support of its renewed motion to compel arbitration and to stay this matter pending the completion of arbitration.

## I.   **INTRODUCTION**

In this action, Plaintiff Nestor Saroza ("Plaintiff") contends that CSI violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*, by sending him a collection letter (the "Letter") that contained an allegedly false, deceptive, or misleading statement.  *See* Compl., ECF No. 1 at ¶¶ 34-35.  As is evident on its face, however, CSI's Letter was sent in connection with Plaintiff's Sears Charge Plus-branded credit card account ending in 3819 (the "Account") issued by Citibank, N.A. ("Citibank").   The Account is governed by a card agreement containing an arbitration provision, which requires Plaintiff to arbitrate "any claim, dispute, or controversy … relat[ed] to [his] Account … or our relationship" (the "Arbitration Provision"). *See* Supplemental Declaration of Terri Montgomery (the "Montgomery Decl."), Ex. 1.[1]  The Arbitration Provision is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.,* which embodies a "liberal federal policy favoring arbitration agreements."  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983).

---

[1]     The Supplemental Declaration of Terri Montgomery – and the exhibits referenced therein – is attached hereto as Exhibit "A".

In spite of his unequivocal agreement to arbitrate, Plaintiff brought his claim in this Court and, despite CSI's request, has refused to submit the claim to arbitration. As a result, CSI brings the current Motion, which, as demonstrated below, the Court should grant because: (1) the FAA applies, (2) there is no genuine dispute regarding the existence of the agreement to arbitrate, (3) the Arbitration Provision is valid and enforceable under applicable South Dakota law, (4) Plaintiff's FDCPA claim falls squarely within the scope of the Arbitration Provision, and (5) the Arbitration Provision encompasses Plaintiff's claims against CSI, which – as a party retained by Citibank to collect a debt on its behalf – is clearly "connected with" Citibank. In addition, CSI has standing to compel arbitration as: (1) Citibank's agent, (2) a third-party beneficiary of the Arbitration Provision, or (3) under the theory of equitable estoppel.

Accordingly, and regardless of the merits (or lack thereof) of Plaintiff's claim, it cannot proceed in this forum, and must be arbitrated on an individual basis pursuant to the arbitration agreement and the FAA.

## II.    BACKGROUND

### A.    Factual Background

The Complaint pertains to CSI's efforts to collect, on behalf of Citibank, a debt owed by Plaintiff. *See* Compl., ECF No. 1. Specifically, Plaintiff points to

CSI's Letter dated May 12, 2016, which contained, without limitation, the following settlement offer:

> We are offering you a settlement amount of $1,419.00, to settle this Citibank, N.A. – SEARS CHARGE PLUS account for less than the balance due* . . . If payment of the offered settlement amount is not received in our office by [June 1, 2016], this offer will be withdrawn and will be deemed null and void.  We are not obligated to renew this offer . . . If you are unable to pay the offered settlement amount . . . please contact our office for alternative payment options which may be available to you […] Checks Payable To: Citibank, N.A. . . . REMIT TO: CLIENT SERVICES, INC. . . .

(the "Settlement Offer").  *See id.* at Ex. A.  The Letter also contained a disclaimer regarding the Settlement Offer, stating that:

> *Citibank, N.A. will report any discharge of indebtedness as required by the Internal Revenue Code and corresponding IRS regulations. Please contact your tax advisor if you have any questions.

*See id.* at ¶ 25, Ex. 1.  While the disclaimer states nothing more than a truism (that Citibank would report if required by law), Plaintiff characterizes the statement as "giving erroneous, inconsistent and incomplete tax information," which falsely implies that a discharge of any debt must be reported to the IRS.  *See id.* at ¶¶ 34-35 (emphasis added).  Based thereon, Plaintiff purports to raise a claim – on behalf of himself and a putative class – under sections 1692d, 1692e, 1692e(2)(A), 1692e(5), 1692e(10), and 1692f of the FDCPA.  *See id.* ¶¶ 52-58

As evident from the face of the Complaint, the Letter was sent in connection with Plaintiff's Citibank Account.  *See* Compl. ¶¶ 17-21, Ex. A.  Plaintiff opened

the Account in January 2010, and in connection therewith, received a copy of the card agreement containing written terms and conditions, as amended from time to time, that govern the Account (the "Card Agreement"). *See* Montgomery Decl. at ¶¶ 2, 8, Ex. 1. Within the Card Agreement were, among other terms, a choice-of-law provision calling for the application of federal and South Dakota law, s*ee id.*, Ex. 1. at p. 12, and –as relevant here – the Arbitration Provision, which required Plaintiff to pursue any claim in mandatory binding arbitration. Specifically, the Arbitration Provision read as follows:

**ARBITRATION**

*PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.* **IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

*Agreement to Arbitrate:* Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

*Claims Covered*

**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal

theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek.  This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?**  Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant, authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir assignee, or trustee in bankruptcy.

\*        \*        \*

**Broadest Interpretation.**  Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

Montgomery Decl. ¶¶ 17-88, Ex. 1 at pp. 10-11 (bolding and emphasis in original).

The Card Agreement also stated that Plaintiff would be bound by its terms if he used the Account, or if he took no action to close the account within 30 days of its opening.  *See Id.*, Ex. 1 at p. 2.  Citibank's records show that: (1) the Card Agreement was mailed to Plaintiff's address, (2) the Card Agreement was not returned as undeliverable, and (3) Plaintiff affirmatively assented to the Card Agreement's terms – including the Arbitration Provision – by using the Account to make purchases.  *See id.* at ¶ 10, Ex. 2.

**B.**     **Relevant Procedural History**

Plaintiff commenced this action on May 12, 2017, by filing his Complaint against CSI.  *See* ECF No. 1.  On August 8, 2017, CSI responded to the Complaint by filing a motion to compel arbitration and stay proceedings (CSI's "First Motion").  *See* ECF No. 6.  On September 11, 2017, Plaintiff filed a response in opposition to CSI's First Motion, in which he baldly alleged that he did not agree to arbitration.  *See* ECF No. 11.  Plaintiff purported to support this position by attaching a declaration, which stated that Plaintiff "d[id] not recall receiving a copy of Exhibit 1 to the Montgomery Declaration [the Card Agreement] at any time while [he] was card holder for the Sears Account."  *See* Declaration of Nestor Saroza, ECF No. 11-1 at ¶ 6.  On September 25, 2017, CSI filed a reply in support of its First Motion.  See ECF No. 14.

On June 8, 2018, Magistrate Judge Steven C. Mannion issued a Report and Recommendation regarding CSI's First Motion (the "R&R").  *See* ECF No. 29 at p. 7.  In the R&R, Judge Mannion noted that Plaintiff "[did] not dispute that his claim falls within the scope of the exemplar arbitration agreement [submitted with CSI's First Motion][,] [but] [i]nstead, . . . argue[d] that [CSI] has failed to establish that he is bound by the arbitration agreement . . . [because] he did not receive a copy of the credit card agreement . . . and . . . there is no signed arbitration agreement between the parties."  *See id.* at p. 5.  Judge Mannion further noted that

the Complaint did not mention arbitration, and therefore, concluded that the motion should be denied without prejudice, with the parties granted leave to engage in limited discovery to clarify whether Plaintiff agreed to arbitrate. *See id.* at p. 7. Finally, the R&R stated that if CSI established "that the card agreement was mailed to [Plaintiff], the Court w[ould] apply a rebuttable presumption that [Plaintiff] received it," and suggested that "[a] supplemental declaration detailing how and when Citibank provided the card agreement to [Plaintiff] may suffice." *Id.* at p. 6.  On October 31, 2018, the Court entered an Order adopting the R&R. *See* ECF No. 34.

The parties proceeded to engage in limited discovery on the issue of arbitrability.  On September 28, 2018, Plaintiff served written discovery requests on CSI, in response to which CSI served timely written objections and responses on October 29, 2018.  *See* Declaration of Daniel C. Fanaselle (the "Fanaselle Decl.") at ¶ 2, Ex. 1.[2]  Concurrent with its written responses, CSI produced the Supplemental Declaration of Terri Montgomery, which, among other things, described Citibank's procedure for mailing credit card agreements – and for documenting card agreements that are returned as undeliverable.  *See* Fanaselle Decl. at ¶ 3, Ex. 2; Montgomery Decl. at ¶¶ 8-9.  On October 31, 2018, CSI

---

[2]     The Declaration of Daniel C. Fanaselle, along with the exhibits referenced therein, is attached hereto as Exhibit B.

deposed Plaintiff regarding the agreement to arbitrate, at which Plaintiff testified, *inter alia*, that he received the credit card in the mail, and used the credit card to make purchases with the Account. *See* Fanaselle Decl. at ¶ 4, Ex. 3, 23:4-6, 29:6-12.

On January 3, 2019, the Court held a status conference, at which the parties confirmed that they conducted, and completed, limited discovery on the issue of arbitrability. *See* Minute Entry dated Jan. 3, 2018, ECF No. 38. Accordingly, CSI also requested leave to renew its motion to compel arbitration, which the Court granted by way of an Order entered on January 14, 2019. *See* ECF No. 38- 39.

## III.   ARGUMENT

### A.   Applicable Legal Standard

Where the FAA applies, a motion seeking compel arbitration is governed by Section 4 of the FAA, which directs courts to determine whether there is a valid agreement to arbitrate between the parties — and expressly restricts courts to this task. *See* 9 U.S.C. § 4; *see also Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997) ("the district court is not to consider the merits of the claims giving rise to the controversy, but is only to determine . . . whether there is a valid agreement to arbitrate."). Indeed, the Supreme Court has consistently held that the FAA "requires courts to enforce the bargain of the parties to arbitrate" and "leaves no place for the exercise of discretion by a district court, but instead mandates that

district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *KPMG LLP v. Cocchi,* 565 U.S. 18, 22 (2011) (citations omitted); *see also AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 344 (2011) (confirming that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"); *accord Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995).

While the FAA's substantive legal standards are widely recognized, courts have disagreed on the procedural standard to apply to a motion to compel arbitration. *Compare Cox v. Midland Funding LLC*, No. 1:14-CV-1576-LMM-JSA, 2015 U.S. Dist. LEXIS 184176, at *15 (N.D. Ga. June 11, 2015) ("A motion to compel arbitration is treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)."), *with Alfonso v. Maggies Paratransit Corp.*, No. 16-CV-0363 (PKC)(LB), 2016 U.S. Dist. LEXIS 112708, at *3 n.2 (E.D.N.Y. Aug. 23, 2016) ("the FAA, and not Rule 12(b), is the procedurally proper framework under which to evaluate [a motion to compel arbitration]. Because Section 4 provides for a specific mechanism for moving to compel arbitration, the Federal Rules of Civil Procedure [ ] are inapplicable.").

The Third Circuit clarified the applicable standard in *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 771 (3d Cir. 2013), which held that courts should apply a 12(b)(6) motion to dismiss standard "[w]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint)." *Guidotti*, 716 F.3d at 773-74.  Where, however, the motion is predicated on a complaint that does not, on its face, establish the agreement to arbitrate "with the requisite clarity," or if the opposing party responds to the motion "with reliable evidence that is more than a naked assertion that it did not intend to be bound by the arbitration agreement," then the standard under Rule 56 applies.  *See id.* at 774.

Where, as here, the complaint does not plead or attach the relevant terms of arbitration, courts may grant the non-movant leave to conduct "limited discovery on the narrow issue concerning the validity of the arbitration agreement."  *Id.* After engaging in limited discovery, the movant can renew its motion, which the court will assess under the Rule 56 summary judgment standard.  See id.; see also *Nicasio v. Law Offices of Faloni*, No. 2:16-0474 (WJM), 2016 U.S. Dist. LEXIS 167174, at *1-2 (D.N.J. Dec. 5, 2016) (directing parties "to engage in limited discovery as to whether a valid agreement to arbitrate exists," after which defendants may file a renewed motion, which "th[e] Court will assess under a Rule 56 summary judgment standard."); *Briggs v. Macy's Inc.*, No. 3:16-0902, 2017

U.S. Dist. LEXIS 20530, at *6-7 (M.D. Pa. Feb. 14, 2017) ("After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.") (citing *Guidotti*, *supra* at 776).

Accordingly, a renewed motion to compel arbitration should be granted where the record – including depositions, declarations, and admissible documents – establish that there is no material issue of fact in dispute that: (1) "a valid agreement to arbitrate exists"; and (2) "the particular dispute falls within the scope of that agreement." *See* Fed. R. Civ. P. 56; *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *see also Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980).  And while Rule 56 provides that all reasonable inferences are construed in the light most favorable to the non-moving party, the party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue.  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).  Moreover, the FAA mandates that courts conduct this analysis in accordance with the FAA's "liberal federal policy favoring arbitration agreements."  *See Moses*, 460 U.S. at 24.  This requires any "questions of arbitrability [to] be addressed with a healthy regard for the federal policy favoring arbitration."  *Id.*

**B.**     <u>**The Federal Arbitration Act Applies**</u>

The FAA applies here because the Card Agreement is a contract involving interstate commerce.   The FAA creates a body of federal substantive law of arbitrability that is applicable to arbitration agreements in contracts that involve interstate commerce.  *See Perry v. Thomas*, 482 U.S. 483, 489 (1987).  Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.").  The FAA defines "commerce" as "commerce among the several states."  9 U.S.C. § 1.  "[T]he word 'involving' . . . signals an intent to exercise Congress's commerce power to the full," and the phrase "'evidencing a transaction' mean[s] only that the transaction . . . turn[s] out, *in fact*, to have involved interstate commerce[.]"  *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 277 (1995) (emphasis in original).  In *Citizens Bank v. Alafabco, Inc.*, the United States Supreme Court confirmed that Congress, in section 2 of the FAA, exercised "the broadest permissible exercise" of its Commerce Clause power, and it admonished (and reversed) the Alabama Supreme Court for applying a "cramped

view" of the Commerce Clause power.  539 U.S. 52, 56, 58 (2003); *see also Fluor Daniel Intercontinental, Inc. v. Gen. Elec. Co.*, 1999 WL 637236, at *3 (S.D.N.Y. Aug. 23, 1999) ("As to the 'involving commerce' requirement, courts have construed the phrase broadly.").

The transactions at issue in this case easily satisfy the "involving commerce" requirement because the parties are citizens of different states:  Plaintiff is a resident of New Jersey, while Citibank is a national bank located in South Dakota. *See* Compl; Montgomery Decl. at ¶ 1.  Moreover, the Card Agreement expressly states that the arbitration agreement "is governed by the Federal Arbitration Act." *See* Montgomery Decl., Ex. 1 at p. 9; *see also Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 954 (N.D. Ohio 2009) (noting that "the Contract itself provides that '[t]he Federal Arbitration Act governs this Arbitration Clause'" and concluding therefore that the "Arbitration Clause is governed by the Federal Arbitration Act . . . and not by any state arbitration law"); *Staples*, 936 F. Supp. at 858; *Thomas O'Connor & Co. v. Ins. Co. of North America*, 697 F. Supp. 563, 566 (D. Mass. 1988).

Additionally, the interstate commerce requirement is satisfied because Plaintiff's claim relates to his credit card account. *See MBNA Am. Bank v Straub*, 12 Misc 3d 963, 968-969, 815 N.Y.S.2d 450, 455 (N.Y. Civ. Ct, Bronx Cty. 2006) ("the FAA is properly applied to credit card agreement arbitration issues […]

because the nature of a credit card contractual relationship implicates interstate commerce") (*citing In re Currency Conversion Fee Antitrust Litig*., 265 F. Supp. 2d 385, 400-416  (S.D.N.Y. 2003); *Ingram v. Citicorp Credit Servs*., No. 05-2095, 2005 U.S. Dist. LEXIS 47247, at *4 (W.D. Tenn. July 8, 2005) ("This dispute involves credit card transactions and billing practices, which clearly implicate interstate commerce; therefore, the FAA governs the Agreement."); *Providian Nat'l Bank v. Screws*, 894 So.2d 625, 627 (Ala. 2003) (concluding that a credit card agreement between bank and the holders of its credit card clearly involves interstate commerce); *United States v. Wadena*, 152 F.3d 831, 853 (8th Cir. 1998) (explaining that transactions with an FDIC-insured institution establish an interstate commerce nexus under the Commerce Clause even if the transactions are wholly intrastate).

**C.     There is No Material Fact in Dispute Regarding Plaintiff's Agreement to Arbitrate His Claim.**

As noted above, Plaintiff based his opposition to CSI's First Motion on his contention that he did not recall receiving the Card Agreement.  *See* R&R, ECF No. 29 at p. 5.  While this assertion may have been sufficient to obtain discovery on the issue of arbitrability, *see Guidotti*, 716 F.3d at 773-74, it is clearly "insufficient to place in issue 'the making of the arbitration agreement' for the purposes of Section 4 of the Federal Arbitration Act."  *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980) (describing as

"insufficient" a "naked assertion" that a party "did not intend to be bound by" an arbitration provision, and requiring instead, "[a]n unequivocal denial that the agreement had been made, accompanied by supporting affidavits").   Here, the evidence submitted with the Montgomery Declaration shows that: (1) the Card Agreement was sent to Plaintiff's home mailing address to which his monthly statements were sent, *see* Montgomery Decl. at ¶ 8; (2) the Card Agreement was not returned as undeliverable, *id.* at ¶¶ 9-10; (3) Plaintiff made purchases with the Account using the plastic credit card, *id.* at ¶ 11; and (4) Plaintiff made payments on the Account in response to the Account Statements that were mailed to his address.  *Id.* at ¶ 15.  This is sufficient to establish that Plaintiff agreed to – and is bound by – the terms of the Card Agreement.

Plaintiff's assent to the Arbitration Provision is further established by his deposition testimony, which confirms that: (1) Citibank mailed Account documents to his correct address, *see* Saroza Dep. at pp. 10: 25, 11:1-5; 13:5-6; (2) he used the credit card to make purchases with the Account, *id.* at p. 29:6-12; (3) he made payments on the Account.  *Id.* at p. 29:17-24.  In fact, Plaintiff conceded that he received the credit card in the mail, which leaves no question that Citibank mailed the Card Agreement – and that Plaintiff did, in fact, receive it:

Q:    Do you remember when you received the credit card?

A     I don't remember. I must have gotten it because I used it.

Q      But you don't member the actual plastic credit card . . . how you received it?

A      Through a letter, an envelope.

Q      Was that sent to your address?

A      Yes

*See id.* at p. 23:4-12.

Accordingly, the record irrefutably shows that Plaintiff received the Card Agreement, and that he assented to its terms by making purchases with the Account.  Plaintif's assertion that he "do[es] not recall receiving a copy of [the Card Agreement]" is the type of "naked assertion" that the Third Circuit has declared insufficient to create a genuine dispute as to the making of the arbitration agreement.  *See Par-Knit Mills*, 636 F.2d at 55; *see also Velazquez v. Midland Funding, Ltd. Liab. Co.*, No. 1:18-cv-00043-CWD, 2018 U.S. Dist. LEXIS 208046, at *26-28 (D. Idaho Dec. 10, 2018) (finding a valid agreement to arbitrate based on "Citibank's records custodian [testimony that] Citibank mailed a copy of the . . . Card Agreement to Plaintiff," and noting that plaintiff's contention that "he d[id] not recall receiving a card agreement in the mail [from Citibank]" failed to "plausibly den[y] that he had a contractual relationship with Citibank arising out of the use of his Best Buy credit card."); *Voll v. HCL Techs., Ltd.*, No. 18-CV-04943-LHK, 2019 U.S. Dist. LEXIS 5060, at *15-16 (N.D. Cal. Jan. 9, 2019) ("Plaintiff's lack of memory as to whether he 'recalls' receiving the . . . email and Arbitration

Agreement . . . does not even directly contradict [defendant's] evidence that Plaintiff in fact received the email. Under these circumstances, no material facts are in dispute . . ." regarding the existence of an agreement to arbitrate).

### D.      The Arbitration Provision is Valid and Enforceable.

There is no question that the Arbitration Provision is valid and enforceable under South Dakota law, which applies here under the Card Agreement's choice-of-law provision.  *See* Montgomery Decl., Ex. 1 at p. 13.  While the FAA requires that the arbitration agreement be enforced according to its terms, South Dakota law governs the determination of whether a valid agreement to arbitrate exists.  *See Cayanan v. Citi Holdings, Inc.*,928 F. Supp. 2d 1182, 1193-94 (S.D. Cal. 2013) (holding that South Dakota law applied under Citibank's choice-of-law provision and applicable choice-of-law test); *Ackerberg*, 898 F. Supp. 2d at 1176-77 (same); *accord First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

As noted above, Plaintiff is bound by the arbitration agreement because he proceeded to use the Account to make purchases after receiving the Card Agreement.  *See* Montgomery Decl. ¶¶ 11-12, Ex. 2.  Under South Dakota law, this is sufficient to establish Plaintiff's assent to the Card Agreement – including the

arbitration provision contained therein. *See* S.D. Codified Laws § 54-11-9 ('use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer . . . .'); *Cayanan*, 928 F. Supp. 2d at 1199 (under South Dakota law 'continued use of a credit [card] account' constitutes assent to arbitration); *Ventura v. 1st Fin'l Bank*, No. C 03-4515 JF, 2005 WL 2406029, at *5 (N.D. Cal. Sept. 29, 2005) (noting that S.D. Codified Laws § 54-11-9 'expressly authorizes contract formation by an individual's use of a credit card'); *Fedotov v. Peter T. Roach & Assocs., P.C.,* No. 03 Civ. 8823(CSH), 2006 U.S. Dist. LEXIS 11422 (S.D.N.Y. Mar. 16, 2006) (under South Dakota law, plaintiff was bound by using cards after receiving card agreements). Moreover, South Dakota law, like federal law, strongly favors arbitration, and resolves any doubts in favor of arbitration. *See Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 814 (S.D. 2002) ('We have consistently favored the resolution of disputes by arbitration . . . There is an overriding policy favoring arbitration when a contract provides for it.').

### E. The Arbitration Provision Encompasses Plaintiff's Claim

There is likewise no dispute that Plaintiff's FDCPA claim falls squarely within the broad scope of the Arbitration Provision. As noted above, the

Arbitration Provision applies to "[a]ll Claims . . . made by or against anyone connected with us or you or claiming through us or you . . . relating to your account, a prior related account, or our relationship." *See* Montgomery Decl., Ex. 1 at ¶ 13.  In determining whether a particular claim falls within the scope of an arbitration agreement, the Court's focus is on the factual underpinnings of the claim rather than the legal theories alleged in the complaint.  *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir. 1996); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987); *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp.2d 1236, 1256 (S.D. Cal. 2000).  As the Seventh Circuit explained: "[t]he touchstone of arbitrability in these circumstances is the relationship of the claim to the subject matter of the arbitration clause." *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Intern.*, 1 F.3d 639, 643 (7th Cir. 1993) (citation omitted).

The FAA mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses*, 460 U.S. at 24-25 (citations omitted).  Accordingly, the Supreme Court has held that a presumption of arbitrability exists where a contract contains an arbitration clause, and that an order to arbitrate should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475

U.S. 643, 650 (1986).  This presumption "is particularly strong" where, as here, "the arbitration clause in question is broad."  *Commc'ns Workers of Am.*, 475 U.S. at 650; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (arbitration agreement requiring arbitration of claims "arising out of or relating to" an agreement constitutes a "broad arbitration clause."); *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4ᵗʰ Cir. 1996) (holding that an arbitration clause that provided arbitration for any dispute that "ar[ose] out of or related to" the agreement was a broad clause, "capable of expansive reach"); *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 176 (3d Cir. 2010) (enforcing a "sweeping" arbitration clause in credit card agreement that applied to "any claim, dispute or controversy by either you or us against the other … arising from or relating in any way to the Cardmember Agreement"); *Davisson*, 644 F. Supp. 2d at 959 ("When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration.  … in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.") (emphasis in original)).[3]  Indeed,

---

[3]    Indeed, numerous courts across the country have enforced Citibank arbitration provisions containing similar (if not identical) language to the provision currently before the Court.  *See, e.g., Ware v. Citigroup Fin. Prods., Inc.*, No. 1:13-cv-00369-CC, Dkt. No. 37 (N.D. Ga. March

the Supreme Court has made clear that "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Randolph,* 531 U.S. at 91.

Additionally, it is now well settled that statutory claims, such as Plaintiff's FDCPA claim, are subject to arbitration.   *Randolph*, *supra* (TILA claim held arbitrable); *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220 (1987) (RICO claim held subject to arbitration); *Bowen v. First Family Fin. Serv.*, 233 F.3d 1331 (11th Cir. 2000) (TILA claim subject to arbitration); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721-24 (9th Cir. 1999) (Sherman Act and Lanham Act claims subject to arbitration); *Sagal v. First USA Bank, N.A.*, 69 F. Supp.2d 627 (D. Del. 1999) (consumer fraud act claims subject to arbitration), *aff'd*, 254 F.3d 1078 (3d Cir. 2001).   This principle has been affirmed by numerous courts in the Third Circuit

---

5, 2014); *Samenow v. Citicorp Credit Servs., Inc.*, No. 16-1346 (CKK), 2017 WL 2303962 (D.D.C. May 25, 2017); *Bey v. Citi Health Card*, No. 15-6533, 2017 WL 2880581 (E.D. Pa. July 6, 2017); *Lenkowski v. Citibank, N.A.*, No. 8:16-cv-03472-CEH-AAS, Dkt. No. 24 (M.D. Fla. April 18, 2017); *Drozdowski v. Citibank, Inc.*, No. 2:15-cv-2786-STA-cgc, 2016 WL 4544543 (W.D. Tenn. August 31, 2016); *McCormick v. Citibank, N.A.*, No. 15-CV-46-JTC, 2016 WL 107911, at *6 (W.D.N.Y. Jan. 8, 2016); *Carr v. Citibank, N.A.,* No. 15-cv-6993 (SAS), 2015 WL 9598797, at *3 (S.D.N.Y. Dec. 23, 2015); *Cayanan*, 928 F. Supp. 2d at 1198-99; *Coppock v. Citigroup, Inc.,* No. C11-1984-JCC, 2013 WL 1192632 (W.D. Wash. Mar. 22, 2013); *Tractenberg v. Citigroup Inc.,* No. CIV.A. 10-3092, 2011 WL 6747429 (E.D. Pa. Dec. 22, 2011); *Ackerberg*, 898 F. Supp. 2d 1172; *Guerrero v. Equifax Credit Info. Servs., Inc.*, No. CV 11-6555 PSG (PLAx), 2012 WL 7683512 (C.D. Cal. Feb. 24, 2012); *Eaves-Leonos v. Assurant, Inc.*, 3:07-CV-18-S, 2008 WL 80173, at *6-7 (W.D. Ky. Jan. 8, 2008); *Taylor v. Citibank USA, N.A.,* 292 F. Supp. 2d 1333 (M.D. Ala. 2003); *Citibank USA v. Howard*, No. 4:02CV64LN, slip. op. at 7, 2002 WL 34573997 (S.D. Miss. Aug. 30, 2002); *Sesto v. Nat'l Fin. Sys., Inc.,* Case No. 04 C 7768, 2005 WL 6519430 (N.D. Ill. Apr. 25, 2005); *Barker v. Citibank (South Dakota), N.A.,* No. A:03CA-130JN, slip. op., 2003 WL 25943008 (W.D. Tex. May 30, 2003).   Thus, the same conclusion should be reached here.

and this district, which routinely compel arbitration of statutory consumer protection claims. *See, e.g., Gay v. CreditInform*, 511 F.3d 369, 395 (3d Cir. 2007) (compelling arbitration of claims under the Credit Repair Organizations Act, 15 U.S.C. §§ 1679, *et seq.* and the Pennsylvania Credit Services Act, 73 Pa. Cons. Stat. Ann. §§ 2181, *et seq.*); *Tantillo v. Citifinancial Retail Servs.*, No. 12-511 (MLC), 2013 U.S. Dist. LEXIS 21832, at *2 (D.N.J. Feb. 19, 2013) (compelling arbitration of FCRA claims); *Davies v. Green Tree Servicing, LLC*, No. 3:14-1711, 2015 WL 3795621, at *10 (M.D. Pa. June 18, 2015) (compelling arbitration of FDCPA claim); *Ellin v. Credit One Bank*, No. 15-2694 (FLW), 2015 U.S. Dist. LEXIS 153533, at *8 (D.N.J. Nov. 13, 2015) (compelling arbitration of claim under the Telephone Consumer Protection Act, 42 U.S.C. § 227 *et seq.*, where the plaintiff "clearly was on notice of the Agreement's arbitration clause, and that Plaintiff signified his acceptance to the Agreement's terms by making purchases on his credit card").[4]   Indeed, courts across the country have enforced the same or substantially identical Arbitration Agreement at issue here. *See, e.g., Shetiwy v.*

---

[4]      The FAA preempts any state law impediments to enforcing arbitration agreements according to their terms, even under the guise of generally applicable contract principles. *See Concepcion*, 563 U.S. at 351 (states may not superimpose judicial procedures on arbitration); *id.* at 1747 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward:  The conflicting rule is displaced by the FAA.") (citing *Preston v. Ferrer*, 552 U.S. 346, 353 (2008)); *Stolt-Nielsen*, 559 U.S. at 683 ("[P]arties are 'generally free to structure their arbitration agreements as they see fit.'"); *see also Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984) (striking down California law that sought to insulate certain issues from arbitration).

*Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 473 (S.D.N.Y. 2013); *Cayanan*, 928 F. Supp. 2d at 1198-99; *Ackerberg*, 898 F.Supp.2d 1172.  The same conclusion should be reached here.

Here, the broad arbitration provision contained in the Card Agreement covers Plaintiff's FDCPA claim, which relate to CSI's alleged conduct while attempting to enforce the Account by collecting the debt due thereunder.  *See generally* Complaint.  Such conduct clearly "aris[es] out of" and is "related to" Plaintiff's Account, and thus it falls squarely within the scope of the Arbitration Agreement.  Accordingly, there is no dispute that a valid arbitration agreement exists that covers Plaintiff's claim, and as such, the Court should compel Plaintiff to pursue his claims in arbitration on an individual (non-class) basis as required under the agreement.  *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* 473 U.S. 614 (1985) (explaining that arbitration should be compelled where a valid arbitration agreement exists that covers the claims at issue).

### A.   <u>CSI Has Standing to Enforce the Arbitration Agreement.</u>

#### 1.   <u>CSI Can Enforce the Arbitration Agreement Under its Plain Language as an Entity "Connected With" Citibank</u>

The plain language of the Arbitration Agreement requires Plaintiff to arbitrate his claims against CSI because CSI is "connected with" CITIBANK.[5]  As

---

[5]    If Plaintiff opposes this motion, he may point to the Third Circuit's decision in *White v. Sunoco, Inc.*, 870 F.3d 257 (3d Cir. 2017), which denied a non-signatory's motion to compel arbitration under Citibank's card agreement.  *White* is factually inapposite, and any similarity

noted above, the arbitration agreement expressly provides that it applies not only to claims asserted against Citibank, but also those "made by or against anyone **connected with** [Citibank] . . . , such as a[n] . . . agent, representative, [or] affiliated . . . company . . . ." *See* Montgomery Decl. at Ex. 1, p. 9 (emphasis added). Arbitration provisions, like the one here, containing language such as "connected with," are entitled to the broadest possible interpretation. *See PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 262 (5th Cir. 2015) ("Agreements mandating arbitration of disputes that 'relate to' or 'are **connected with**,' rather than merely those 'arising out of,' a contract are 'broad arbitration clauses capable of expansive reach"') (emphasis added). Indeed, several courts have found the language of the arbitration agreement at issue here to be "broad"

---

between the cases ends at the wording of the arbitration provisions at issue. In *White*, the court found the Citibank's card agreement had no relevance to the plaintiff's claims, which were premised on a wholly separate agreement between the plaintiff and Sunoco, in which Sunoco agreed to "discount 5 cents per gallon of fuel at Sunoco locations." *See White*, 870 F.3d at 266 ("Sunoco's promotional materials constituted a separate contract from the Card Agreement."). As the district court noted, the existence of a separate agreement between the plaintiff and Sunoco "save[d] the day for [the] Plaintiff[,]" *see White v. Sunoco, Inc.*, 189 F. Supp. 3d 486, 495 (E.D. Pa. 2016), as it meant the terms of the card agreement (and thus its arbitration provision) had no bearing on the plaintiff's claims against Sunoco. *See White*, 870 F.3d at 265. Moreover, the Third Circuit found that Sunoco – which was not acting on behalf of Citibank, but rather on its own behalf, in a joint marketing campaign – was not "a 'connected' entity under the arbitration clause." *Id.* The *White* court noted that Sunoco did not fall within any "of the enumerated relationships" (*i.e.*, agent, representative, etc.), the nature of which suggested "the parties did not intend for [the arbitration clause] to govern an entity with merely a marketing relationship with Citibank." *Id.* at 268.

Here, on the other hand, there is no separate agreement governing CSI's relationship with Plaintiff, and CSI's relationship with Citibank (as its agent or representative) falls squarely within the "enumerated relationships" provided as examples of third-parties "connected with" Citibank. *See* Ex. A, Ex. 1 at p. 9. Thus, if applicable at all, the holding in *White* supports CSI's Motion, demonstrating that CSI is among those that may compel arbitration under the agreement.

enough to encompass claims against third party debt collectors. *See, e.g., Gates v. Northland Grp., Inc.*, No. 16-cv-01492, 2017 U.S. Dist. LEXIS 23884, at *6 (D.N.J. Feb. 21, 2017) (claims related to allegation that a debt collector "sent Plaintiff a collection letter for his debt incurred to Citibank . . . f[ell] squarely within the credit card agreement's arbitration provision."), *Fedotov*, 2006 U.S. Dist. LEXIS 11422, at *8 (Citibank's arbitration agreement "is broad enough to encompass the . . . law firm, engaged to recover credit card debt on [Citibank's] behalf."); *Garrett v. Margolis, Prtizker, Epstein & Blatt, P.A.*, 861 F. Supp. 2d 724, 729 (E.D. Va. 2012) ("debt collector who is only one degree removed and acting at Citibank's behest has no difficulty" compelling arbitration under Citibank's arbitration agreement, which is broad enough to "allow[] anyone 'connected with' Citibank to piggyback on the [agreement]"); *Gold v. Global Credit & Collection Corp.*, No. 1:16-cv-05404-WFK-ST (E.D.N.Y. April 24, 2017) (Kuntz, J.) (Minute Order granting debt collector's motion to compel arbitration under identical Citibank card agreement); *Clarke v. Alltran Fin.*, No. 17-CV-3330, 2018 U.S. Dist. LEXIS 29011, at *9 (E.D.N.Y. Feb. 22, 2018) (holding third party debt collector could "compel arbitration under the plain language of the [Citibank] card agreement" because it was "retained and authorized to collect amounts owed " on the account, which was "sufficient to establish that [it] is 'connected with' Citibank under the card agreement."); *cf*

*Sprayberry v. Portfolio Recovery Assocs., LLC*, No. 17-cv-00112, 2018 U.S. Dist. LEXIS 78713, at *14 (D. Or. Apr. 11, 2018) (denying debt collector's motion to compel arbitration, and noting that if the creditor had intended to grant debt collectors "the benefit of its arbitration clause, it was free to include . . . 'anyone connected with' [it] in its arbitration clause, similar to other issuing banks") (citing *Clarke*, *supra*, at *9). The same result should be reached here. CSI, which was retained by Citibank to collect on the Account on its behalf, is therefore "connected with" Citibank, and thus, has standing to enforce the Arbitration Agreement.

## 2. Traditional Principles of Contract Law Allow CSI to Enforce the Arbitration Agreement

CSI also has standing to enforce the Arbitration Agreement under several of the third-party enforcement principles recognized under traditional contract law. Indeed, it is widely recognized that while "arbitration is a matter of contract . . . an obligation to arbitrate may not be limited to signatories to the agreement containing the arbitration agreement." *In re Currency Conv. Fee*, 265 F. Supp. 2d at 401. Rather, third parties can enforce arbitration provisions if "traditional principles of state law allow [the] contract to be enforced by . . . nonparties to the contract." *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014). Courts have generally recognized six principles that permit third parties like CSI to compel arbitration, including, as relevant here: (1) agency; (2) estoppel, and (3) as

third-party beneficiaries.  *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 195 (3d Cir. 2001).  Thus, although CSI has standing to compel arbitration under the express terms of the Arbitration Agreement, it can also compel arbitration under these principles, each of which are recognized under South Dakota law.

### a.    CSI Can Compel Arbitration as a Third-Party Beneficiary of the Arbitration Agreement

First, CSI can compel arbitration as a third-party beneficiary of the Arbitration Provision.  Under South Dakota law, a party qualifies as a third-party beneficiary if the contract was entered into with the "intent to benefit that party or an identifiable class of which the party is a member."  *Jennings v Rapid City Reg'l Hosp., Inc*., 802 NW2d 918, 921-922 (S.D. 2011).  Whether such intent exists is determined by the terms of the contract.  *Id.*  Here, by expressly extending the right to compel arbitration to "**anyone**" "**connected with**" or "**claiming through**" Citibank, the Arbitration Provision manifests the intent to benefit a broad category of third-parties "connected with" Citibank, including but not limited to those qualifying as its "agents" and "representatives."  *See* Montgomery Decl., Ex. 1 at p. 9.

CSI plainly falls within this broad category of third-party beneficiaries. Indeed, courts have repeatedly affirmed the standing of third-party debt collectors to enforce arbitration provisions that, like the provision before the Court, include

language extending the right to compel arbitration to the creditor's "agents" or "representatives." *See, e.g., Mendoza v. Ad Astra Recovery Services*, No. 13-cv-06922, 2014 U.S. Dist. LEXIS 1716, at *7 (C.D. Cal. Jan. 6, 2014) (granting non-signatory debt collector's motion to compel arbitration where the "plaintiff's claims ar[o]se out of [its] attempts to collect debts owed to [the creditor], and thus involve[d] [its] conduct as an agent of [creditor]" because, *inter alia*, the contract evidenced an intent to benefit agents of the creditor); *Dooley v. Federated Law Grp., PLLC,* No. 16-cv-04703, 2018 U.S. Dist. LEXIS 61086, at *33 (N.D. Ga. Jan. 22, 2018) (debt collector, "as agents of [the creditor], fit the definition of Related Parties under the [card agreement]. Thus, as Related Parties and agents of the [the creditor], Defendants are entitled to enforce the . . . Arbitration Provision.").   In fact, at least one of the aforementioned decisions addressing a Citibank card agreement affirmed that third-party debt collectors qualify as third-party beneficiaries thereunder.  *See, e.g., Garrett*, 861 F. Supp. 2d at 729 ("a debt collector who is only one degree removed and acting at Citibank's behest has no difficulty invoking the arbitration provision.")

Accordingly, CSI – which was retained by Citibank to collect a debt incurred as a result of Plaintiff's use of the Account – clearly falls within the scope of the "connected" entities the Arbitration Provision intended to benefit.  And as such, CSI can compel arbitration as a third-party beneficiary thereof.

**b.**     **CSI Can Compel Arbitration as Citibank's Agent**

CSI also has standing to compel arbitration because it was acting as Citibank's agent when it sent the Letter.  The principle of agency enforcement permits an agent to enforce an agreement executed by its principal – irrespective (or in spite) of the terms of any contract governing their relationship – by stepping into the shoes of the principle where the claims against the agent relate to: (1) conduct or behavior engaged in by the agent in its capacity as agent, and (2) the contract containing the arbitration clause.  *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 916 (N.D. Cal. 2011); *see also Rossi*, 648 N.W.2d at 815 ("in accordance with the Federal Arbitration Act, the Federal courts have consistently afforded agents the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to . . . their capacities as agents . . . .").

CSI qualifies as Citibank's agent under South Dakota law, which defines an agency relationship as "the representation of one called the principal by another called the agent in dealing with third persons.'  SDCL 59-1-1.  An agency relationship will be found where the parties' actions establish the agent had actual or apparent authority to act on the principal's behalf.  *See Dahl v. Sittner*, 429 N.W.2d 458, 461-62 (S.D. 1988).  Moreover, South Dakota has adopted the Restatement view, under which a party can qualify as an agent for a specific

purpose, even if an agreement expressly disclaims such a relationship.  *See Nattymac Capital LLC v Pesek*, 784 NW2d 156, 160-161 (S.D. 2010) (loan servicer was the lender's "agent for purposes of collecting loan payments," even though the agreement between the parties defined it as an independent contractor – and citing Restatement (Second) of Agency § 14N (1958) for the proposition that "an independent contractor may also be an agent"); *see also Clarke*, *supra*, at *17 n.7 ("Even if . . . the written agreement between Alltran and Citibank . . . include[d] a provision stating . . . Alltran is an independent contractor rather than an agent . . . the Court would still conclude . . . Alltran was acting as Citibank's agent here because under South Dakota law, 'one who contracts to act on behalf of another and subject to the other's control except with respect to his physical conduct is an agent and also an independent contractor.'" (quoting *Avera St. Luke's Hosp. v. Karamali*, 848 F. Supp. 2d 1017, 1028 (D.S.D. 2012)).

Here, CSI was retained and authorized to enforce the Card Agreement (on Citibank's behalf) by collecting the debt due thereunder.  Therefore, when CSI sent the Letter that forms the basis of Plaintiff's claim, it was plainly acting as Citibank's agent with respect to Plaintiff's Account.[6]  This is further established by

---

[6] *See generally* Josh Adams, *The Role of Third-Party Debt Collection in the U.S. Economy*, ACA International, ACA International White Paper, at *3 (Jan. 2016)  ("the fundamental role of the debt collection industry is the enforcement of contracts, primarily between lenders and consumers") (citing Viktar Fedaseyeu & Robert Hunt, *The Economics of Debt Collection: Enforcement of Consumer Credit Contracts*, Fed. Reserve Bank of Phila., Working Paper No. 14-7 at p. 1 (2014) (describing debt collection as the "the primary mechanism of contract

the face of the Letter, which manifest CSI's authority to negotiate on behalf of, and bind, Citibank to settlement agreements, for the purpose of collecting payments to Citibank.  *See* Compl. at Ex. A; *see also Columbia Broad. Sys., Inc. v. Stokely-Van Camp, Inc.*, 522 F.2d 369, 375-76 (2d Cir. 1975) ("As to authorization to contract, it may be inferred from authority to conduct a transaction if the making of the contract is incidental thereto, usually accompanies such a transaction or is reasonably necessary to accomplish it.") (citing Restatement (Second) of Agency § 50).  Thus, CSI was acting as Citibank's agent when it engaged in the conduct complained of in the Complaint.  *See Clarke*, *supra* at *16 (the "uncontroverted facts" presented in Citibank's declaration and the subject collection notices, which show "Alltran was authorized to 'negotiate' with plaintiff 'to resolve the debt' . . . establish that Citibank and Alltran agreed to enter into an agency relationship, and that Alltran was acting in its capacity as Citibank's agent when it sent the debt collection letter to plaintiff.").

Because CSI's alleged wrongdoing is directly related to the Account and governing Card Agreement (and *ipso facto*, the Arbitration Provision), CSI has the right to compel arbitration of this dispute as Citibank's agent.  *See Laster v. T-*

---

enforcement in consumer credit markets"); *see also* Fedaseyeu, *Debt Collection Agencies and the Supply of Consumer Credit*, Fed. Reserve Bank of Phila., Working Paper No. 15-23 (June 19, 2015) ("As with any debt, the willingness of lenders to provide credit card loans relies on the presence of enforcement mechanisms that allow creditors to pursue a defaulting borrower's income and assets").

*Mobile USA, Inc.*, No. 05cv1167, 2013 WL 4082682, at *5 (S.D. Cal. July 19, 2013) (the "relevant inquiry in determining whether a non-signatory agent may enforce an arbitration clause [is] whether any of the alleged agent's wrongdoing relate to or arise from the contract containing the arbitration clause.") (citation omitted); *Mendoza*, *supra*, at *6-7 (debt collector had standing to compel arbitration as the creditor's agent); *Fedotov*, *supra*, at *8 (same); *Clarke*, *supra*, at *17 ("because Alltran was acting as Citibank's agent when it sent the at-issue debt collection letter to plaintiff, and because plaintiff's claims relate to the card agreement, Alltran can compel arbitration as Citibank's agent.").

### c.   Plaintiff Is Estopped from Avoiding Arbitration

CSI also has standing to compel arbitration under the doctrine of equitable estoppel, which allows a third party to compel arbitration when the plaintiff-signatory asserts "claims arising out of agreements [containing an arbitration agreement] against nonsignatories to those agreements." *Rossi,* 648 N.W.2d at 815. Here, Plaintiff's claims arise out of and relate to the Card Agreement, because they are premised on CSI's attempt to collect the debt owed to Citibank – conduct that CSI undertook as a direct result of Plaintiff's failure to comply with the terms of the Card Agreement. *See Fedotov*, *supra*, at *10 ("Plaintiff's claims . . . are covered by the agreement to arbitrate . . . [because they] arise out of the efforts of Defendant . . . to recover only those funds owed to the Bank as a result of charges

Plaintiff made on his credit card account.").  Accordingly, even if CSI could not compel arbitration for the numerous reasons discussed above, Plaintiff is still required to arbitrate his claims against CSI under the doctrine of equitable estoppel.

### B.    The Action Must Be Stayed Pending Arbitration

As set forth above, Plaintiff's claim is subject to binding, individual (non-class) arbitration.  Once a court determines that claims are subject to arbitration, the court must stay all proceedings pending arbitration.  *See* 9 U.S.C. § 3 (providing that "the court … upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration … shall on application of one of the parties stay the trial of the action").  This provision is "mandatory" and a court lacks discretion to deny the request to stay.  *In re Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993).  Accordingly, the claims asserted against CSI should be dismissed or stayed pending the completion of arbitration.

## IV.   CONCLUSION

For the reasons stated herein, CSI requests that the Court grant its Motion and compel Plaintiff to submit his claims to arbitration on an individual (non-class) basis, and stay this action pending completion of the arbitration pursuant to the express terms of the Arbitration Agreement, pursuant to Section 3 of the FAA.

Respectfully submitted,

/s/ *Daniel C. Fanaselle*

DATED:  January 24, 2019

Daniel JT McKenna, Esquire
Daniel C. Fanaselle, Esquire
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ  08002
T: 856.761.3400
F: 856.761.1020

*Attorneys for Defendant Client Services, Inc.*