# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NESTOR SAROZA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 2:17-cv-03429 |
| CLIENT SERVICES, INC., | ) | |
| Defendant. | ) | |

## REPLY IN SUPPORT OF DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
T:  215.665.8500
F:  215.864.8999

*Counsel for Defendant Client Services, Inc.*

On the brief:

Daniel JT McKenna
Daniel C. Fanaselle

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.    INTRODUCTION ........................................................................................... 1

II.   ARGUMENT ................................................................................................. 2

    A.    The Evidence Shows Plaintiff Agreed to Arbitrate His Claims. ......... 2

        1.    Plaintiff Fails to Refute His Receipt of the Card
             Agreement ................................................................................ 5

    B.    Plaintiff Fails to Refute CSI's Right to Invoke Arbitration ................ 6

        1.    Plaintiff's Reliance on White is Misplaced ............................. 6

        2.    The Arbitration Agreement Does Not Restrict
             Enforcement By Third Parties. ................................................. 8

             a.    CSI Qualifies as a Third Party Beneficiary. .................. 10

             b.    Plaintiff Cannot Refute CSI's Ability to Enforce
                 the Arbitration Agreement as Citibank's Agent ............ 12

III.  CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Cayanan v. Citi Holdings, Inc.*,
  928 F. Supp. 2d 1182 (S.D. Cal. 2013)...................................................................3

*Clarke v. Alltran Fin.*,
  No. 17-CV-3330 (JFB) (AYS), 2018 U.S. Dist. LEXIS 29011
  (E.D.N.Y. Feb. 22, 2018)..............................................................................8, 10

*Columbia Broad. Sys., Inc. v. Stokely-Van Camp, Inc.*,
  522 F.2d 369 (2d Cir. 1975) ...............................................................................13

*Coppock v. Citigroup, Inc.*,
  2013 U.S. Dist. LEXIS 40632 (W.D. Wash. March 22, 2013) ...........................4

*Danley v. Encore Capital Grp., Inc.*,
  No. 15-CV-11535, 2016 U.S. Dist. LEXIS 64242 (E.D. Mich. May
  16, 2016) ...............................................................................................................4

*Freeman v. Liu*,
  112 F.R.D. 35 (N.D. Ill. 1986)...........................................................................15

*Griswold v. Coventry First LLC*,
  762 F.3d 264 (3d Cir. 2014) ..............................................................................11

*Hadlock v. Norwegian Cruise Line, Ltd.*,
  No. 10-0187 AG, 2010 U.S. Dist. LEXIS 39247 (C.D. Cal. Apr.
  19, 2010) ...............................................................................................................3

*In re Cendant Corp. Prides Litig.*,
  311 F.3d 298 (3d Cir. 2002) ................................................................................5

*Mims v. Glob. Credit & Collection Corp.*,
  803 F.Supp.2d 1349 (S.D. Fla. 2011)................................................................15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)................................................................................................11

*Orn v. Alltran Fin.*,
  2018 U.S. Dist. LEXIS 199304 (M.D. Pa. Nov. 26, 2018).........................passim

ii

*Pacanowski v. Alltran Fin., LP*,
   271 F.Supp. 3d 738 (M.D. Pa. 2017)..........................................................passim

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*,
   636 F.2d 51 (3d Cir. 1980) ...................................................................................6

*Santana v. A.L. Recovery, LLC*,
   No. 18-16, 2018 U.S. Dist. LEXIS 138652 (W.D. Pa. Aug. 16,
   2018) ...................................................................................................................11

*Swift v. Zynga Game Network, Inc.*,
   805 F. Supp. 2d 904 (N.D. Cal. 2011).................................................................12

*White v. Sunoco, Inc.*,
   189 F. Supp. 3d 486 (E.D. Pa. May 24, 2016) .......................................9, 10, 11

*White v. Sunoco, Inc.*,
   870 F.3d 257 (3d Cir. 2017) .......................................................................passim

**OTHER CASES**

*Aimonetto v. Rapid Gas, Inc.*,
   126 N.W.2d 116 (S.D. 1964) ...............................................................................13

*Rossi Fine Jewelers, Inc. v. Gunderson*,
   648 N.W.2d 812 (S.D. 2002) ...............................................................................12

*Royal Mortg. Corp. v. Montague*,
   41 S.W.3d 721 (Tex. App. 2001).........................................................................14

**FEDERAL STATUTES**

Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ........................6, 8, 11

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ............................................................12

9 U.S.C. § 3 ...................................................................................................................3

**OTHER STATUTES**

S.D. Codified Laws § 54-11-9 ......................................................................................2

**RULES**

Fed. R. Evid. 803(6)..............................................................................4

**OTHER AUTHORITIES**

Restatement (Second) of Agency § 12 ....................................................13

Restatement (Second) of Agency § 50 ....................................................13

## I.  INTRODUCTION

In Plaintiff's Opposition (the "Opposition") to CSI's Renewed Motion to Compel Arbitration and Stay Proceedings (CSI's "Motion"), Plaintiff seeks to avoid Plaintiff's contractual duty to arbitrate his claims based on his arguments that: (1) the Montgomery Declaration failed to show he received the Card Agreement attached as Exhibit 1, and (2) CSI lacks standing to compel arbitration based on the Third Circuit's decision in *White v. Sunoco, Inc.*, 870 F.3d 257 (3d Cir. 2017), and two subsequent district court cases: *Pacanowski v. Alltran Fin., LP*, 271 F.Supp. 3d 738 (M.D. Pa. 2017), and *Orn v. Alltran Fin.*, 2018 U.S. Dist. LEXIS 199304 (M.D. Pa. Nov. 26, 2018). These arguments fail for several reasons.  First, there is no dispute that Plaintiff is bound by the Arbitration based on his admission that he received the Card Agreement when he opened the Account, and his failure to provide any evidence refuting the fact that terms of the document he received are set forth in Exhibit 1 to the Montgomery Declaration. Moreover, Plaintiff's attempt to challenge CSI's standing is based on a flawed interpretation of *White*, which is readily distinguishable and, in any event, has no bearing on CSI's right to enforce the arbitration provision under the third party enforcement principals raised in its opening brief.  Indeed, by failing to meaningfully address CSI's third party beneficiary and agency arguments (other than his blind reliance on the aforementioned district court cases) Plaintiff

concedes that CSI has the right to compel arbitration under these principals.

For these reasons, and as further discussed below, CSI's Motion to Compel should be granted, and Plaintiff should be ordered to submit her claims to arbitration on an individual basis.

## II.   ARGUMENT

### A.   The Evidence Shows Plaintiff Agreed to Arbitrate His Claims.

In an attempt to dispute sufficiency of the Montgomery Declaration, Plaintiff asserts that it: (1) fails to provide a signed Copy of the Agreement, (2) "does not state that [it] … was ever mailed to [him]," and (3) attaches a "different card agreement" (than the one submitted with CSI's First Motion) containing unusual formatting and annotations, which leads him to believe it does not reflect "a finalized Card Agreement, but rather an interim or draft version of a Card agreement that was not sent to [him]."[1]  *See* Opp. at pp. 12-13.

Contrary to Plaintiff's assertion, no signature is required to create a valid agreement to arbitrate,[2] nor is a party required to produce an identical copy the

---

[1]   Specifically, Plaintiff argues the pages of the Agreement have only one (rather than three) column, and include various annotations, including (1) "perpendicular horizontal and vertical lines" in the corners, (2) language at the bottom stating "Page=3.625" x 6.75" and "2nd Proof – 10/5/2009," and (3) language at the top stating "10/5/09 6:50 PM." *See id.* at pp. 13-15.

[2]   Indeed, neither South Dakota law nor the FAA impose any such requirement to create a binding contract.  *See* S.D. Codified Laws § 54-11-9 ("use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to

original agreement to prove its terms.   Rather, the Montgomery Declaration properly relies on an authenticated exemplar Card Agreement to establish the terms that were sent to Plaintiff when he opened the Account.   *See* Montgomery Decl. ¶ 8.   Courts have widely approved the use of exemplars to prove the terms of original contracts, and  contrary to Plaintiff's assertion  have not recognized any requirement related to the formatting of such documents.[3]   *See, e.g.*; *Hadlock v. Norwegian Cruise Line, Ltd.*, No. 10-0187 AG, 2010 U.S. Dist. LEXIS 39247, at *4 (C.D. Cal. Apr. 19, 2010) ("a[n] exemplar of what Defendant normally gives to its customers is evidence of what Plaintiff received." ); *Cayanan v. Citi Holdings, Inc*., 928 F. Supp. 2d 1182, 1199 (S.D. Cal. 2013) (Citibank's declaration properly authenticated the attached exemplar card agreements by "aver[ring] cardmember agreements were sent to [plaintiff] 'when' she opened her account and that she assented to the cardmember agreements-and arbitration agreements therein-when she used her accounts after receiving the agreements.").   Here, Ms. Montgomery properly authenticated Exhibit 1 as Citibank's business record,[4] and testified that it

---

cancel the account creates a binding contract between the card holder and the card issuer . . . ."); *see also* 9 U.S.C. § 3..

[3]     For this reason, the Court should reject Plaintiff's "Supplemental Declaration," asserting he "would have definitely remembered" receiving a card agreement that was 16 pages long and contained various "formatting symbols …." *See* Opp., Ex. 1 at ¶¶ 7-8.

[4]     Ms. Montgomery's testimony properly authenticated Exhibit 1 as an

"contain[s] the terms and conditions [that] govern[ed] the Account at the time it was opened, and that, in accordance "with Citibank's regular practice," it was sent "to Plaintiff, along with the plastic credit card for the Account, when the Account was opened." *See* Montgomery Decl. at ¶ 8. This is sufficient to establish that the terms set forth in Exhibit 1 – including the Arbitration Provision – were sent to Plaintiff when he opened the Account. *See id.*

And because Plaintiff provides no evidence disputing this fact, he has not refuted the presumption that he received the Arbitration Agreement, as contained in Exhibit 1, when he opened the Account. *See Danley v. Encore Capital Grp., Inc.*, No. 15-CV-11535, 2016 U.S. Dist. LEXIS 64242, at *11-12 (E.D. Mich. May 16, 2016) (rejecting challenge to unsigned exemplar credit card agreements, which were properly authenticated by declarations from the original creditors, because plaintiffs did "not come forward with any evidence to rebut that the [exemplars] … [were] the same as [the agreements] entered between plaintiffs and the original creditors."); *Coppock v. Citigroup, Inc.*, 2013 U.S. Dist. LEXIS 40632, *12-13 (W.D. Wash. March 22, 2013) (accepting an "exemplar" agreement where the plaintiff "produced no evidence that the 2001 agreement (an exemplar of which Citi submitted with its motion) is not the agreement that governed her account.").

---

admissible business record. *See* Montgomery Decl. at ¶¶ 5-6; *see also* Fed. R. Evid. 803(6). Moreover, Ms. Montgomery established her competence to testify to these facts based on her familiarity with, and access to Citibank's business records related to the Account. *See id.* at ¶¶ 2-5.

Accordingly, Plaintiff does not, and cannot, refute the evidence provided in the Montgomery Declaration, showing that the terms contained in Exhibit 1 were sent to him at the time he opened the Account.

### 1.     **Plaintiff Fails to Refute His Receipt of the Card Agreement**

Plaintiff also fails to refute Ms. Montgomery's testimony that the Card Agreement was "provided to [him], along with the plastic credit card" in accordance "with Citibank's regular practice," *see* Montgomery Decl. at ¶ 8, which is sufficient to show that Plaintiff actually received the Card Agreement. *See In re Cendant Corp. Prides Litig.*, 311 F.3d 298, 304 (3d Cir. 2002) ("proof of procedures followed in 'the regular course of operations' gives rise to a strong inference that it was properly addressed and mailed").  Rather, Plaintiff admits that he received a card agreement with his credit card, s*ee* Saroza Dep. p. 23:4-12, ECF 40-4 at p. 22; Opp. at p. 12, but asserts the "Declaration fails to establish" that Exhibit 1, rather than "a" Card Agreement, "was actually mailed to [him] or that [he] ever received it." *See* Opp. at p. 12.  This argument obviously fails for the reasons discussed above, as Plaintiff provides no evidence refuting the above evidence showing he received the Arbitration Agreement when he opened the Account.

Plaintiff's Declaration likewise fails to refute the evidence showing he received the Card Agreement.  Setting aside Plaintiff's erroneous formatting

arguments, it provides only a conclusory assertion that he "never independently agreed to arbitrate any claims regarding [his] Sears Charge Plus [Account]." *See* Saroza Decl., ECF 43-1, at ¶ 11. This is precisely the type of unsupported "naked assertion" that the Third Circuit has found insufficient to place the making of the agreement at issue. *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980). As such, Plaintiff has clearly failed to rebut the presumption that he received the Card Agreement, and as a result of his use of the Account, is bound by its terms.

### B.     Plaintiff Fails to Refute CSI's Right to Invoke Arbitration

#### 1.     Plaintiff's Reliance on *White* is Misplaced

As noted above, Plaintiff asserts that CSI lacks standing to compel arbitration based on the Third Circuit's decision in *White*, along with the subsequent district court decisions in *Pacanowski* and *Orn*, which he erroneously characterizes as standing for the "clear[] … precedent" that "[t]hird-party debt collector[s] … ha[ve] no standing to compel" arbitration of FDCPA claims. *See* Opp. at p. 24. Plaintiff suggests that each of these decisions considered and rejected the same arguments raised by CSI herein, and concludes, without any meaningful analysis, that the cases are dispositive to CSI's Motion.

Contrary to Plaintiff's assertions, *White* lends no support to Plaintiff's arguments – nor does it provide any basis to deny CSI's Motion. As noted in

CSI's opening brief, *White* is readily distinguished from the case at bar because the claims raised therein arose under a separate contract between the consumer and Sunoco – which had no connection to the Citibank Card Agreement. *See* Op. Br., ECF No. 40-2 at pp. pp. 23-24, n. 5. Based on this distinction, *White* held Sunoco could not compel arbitration under an equitable estoppel theory because the Card Agreement had no relation to Sunoco's alleged fraudulent promise. *Id.* at 265.

The *White* court did discuss the definitions of "you" and "we" as limitations on the right to elect arbitration, and rejected Sunoco's alternative argument that it could compel arbitration under the text of the arbitration provision as a "connected entity," because the text of the provision extended the right to elect arbitration only to "you" or "we." *Id.* at 267. But contrary to Plaintiff's insistence, this finding (which comprises a single paragraph of the opinion) does not act as an absolute bar to arbitration by "connected entities." Nor does its reasoning extend beyond the plain terms of the contract – or have any bearing on the ability to proceed under the third party enforcement principles raised by CSI. In fact, while the Third Circuit did not address Sunoco's right to compel arbitration under agency or third party beneficiary principles, it acknowledged the effect of the "connected entities" language, and suggested (albeit in dicta) that a "connected entity" could compel arbitration as a third party beneficiary – although Sunoco did not qualify as such. *See id.* at 268 ("none of these enumerated relationships apply to Sunoco, and . . .

the relationships listed evoke far closer connections . . . [which] suggests that the parties did not intend for it to govern an entity with merely a marketing relationship with Citibank.").  Accordingly, far from foreclosing CSI's ability to arbitrate, *White* actually supports CSI's right to compel arbitration under the third party enforcement principles discussed in its opening brief.

### 2.    The Arbitration Agreement Does Not Restrict Enforcement By Third Parties.

In addition to defining the entities capable of electing arbitration under the Arbitration Agreement's plain terms, Plaintiff contends the definitions of "You," "we," and "us" act to prohibit third party enforcement altogether.  *See* Opp. at p. 5.  While Plaintiff mainly bases this assertion on his specious interpretation of *White* – which, for the reasons discussed above, need not be considered by the Court – he points to district court decisions in *Pacanowski* and *Orn* as supporting the extension of *White* to arbitration demands by "debt collector[s] … sued for violations of the FDCPA," *see* Opp. at p. 20," and hastily concludes that *White* precludes the Court from considering the Eastern District of New York's well-reasoned opinion in *Clarke v. Alltran Fin.*, No. 17-CV-3330 (JFB) (AYS), 2018 U.S. Dist. LEXIS 29011 (E.D.N.Y. Feb. 22, 2018).  *See id.* at p. 21, n. 1.  Once again, Plaintiff is mistaken, as neither *Pacanowski* nor *Orn* support the sweeping prohibition on third-party enforcement espoused by Plaintiff, nor do they lend any valid support for his Opposition, as they were either wrongly decided (and in the

case of the latter, is currently on appeal to the Third Circuit), or did not consider (or do not support) the arguments raised by Plaintiff.

As a preliminary matter, the Court should reject the conclusions reached by the court in *Pacanowski*, and should not give any weight to Plaintiff's reliance thereon, because the case was wrongly decided, and contradicts both the FAA, and the black-letter legal principles of third party enforcement discussed herein. Specifically, the court in *Pacanowski*, like Plaintiff, blindly relied on *White* because it addressed "arbitration provisions nearly identical to that in the present case," *see* Opp. at p. 1, and ignored the aforementioned factual distinctions that were critical to the Third Circuit's decision in *White*. *See White*, 870 F.3d at 262. Indeed, the significance of these distinctions was noted in the district court decision affirmed by the Third Circuit in *White*, which found the existence of a separate agreement between the plaintiff and Sunoco "save[d] the day for [the] Plaintiff[,]" *see White v. Sunoco, Inc.*, 189 F. Supp. 3d 486, 495 (E.D. Pa. May 24, 2016), as it meant that the terms of the card agreement had no bearing on the plaintiff's relationship with Sunoco. *See White*, 870 F.3d at 265.

For these same reasons, the Court is not estopped from considering the well-reasoned analysis applied by the court in *Clarke*, which – contrary to Plaintiff's suggestion – does not conflict or disagree with the holding in *White*. Rather, the court in *Clarke* distinguished *White* on the same bases identified above, and found

9

"the Third Circuit's interpretation of the card agreement was justified by the fact that the provision" indicated "that the parties did not intend for it to govern an entity with merely a marketing relationship with Citibank." *Clarke, supra* at *12.

In any event, any argument that these cases are dispositive to CSI's ability to compel arbitration under the principals of agency and third party beneficiary is nonsensical, as *White* never addressed these issues, while the holdings in *Pacanowski* and *Orn* are either distinguishable or were wrongly decided.

### a. CSI Qualifies as a Third Party Beneficiary.

Plaintiff argues that CSI cannot enforce the Arbitration agreement as a third party beneficiary because the Card Agreement does not identify CSI by name, and "there is no indication that Citibank clearly intended to benefit … CSI under" its terms. *See* Opp. at pp. 29-30. As support for this conclusion, Plaintiff cites *Orn*, *Pacanowski*, and the district court decision in *White* – none of which provide any valid basis to deny CSI's Motion. First, Plaintiff's reliance on the district court decision in *White* is misplaced for the reasons discussed above, as it is distinguishable for the same reasons as the subsequent Third Circuit opinion. *See White*, 189 F. Supp. 3d 486. Moreover, its third party beneficiary analysis (which was not raised on appeal) is based on its erroneous extension of the limited exception to the FAA's presumption in favor of arbitration – recognized in *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014) as granting a

*non-signatory party opposing arbitration* "the benefit of all reasonable doubts and inferences" – to a non-signatory party is seeking to arbitrate claims brought against it by a signatory. *See White*, 189 F. Supp. 3d at 496. This is not supported by Third Circuit precedent, and is contrary to the FAA, which requires questions related to the scope of an arbitration agreement – including a non-signatory's ability to enforce its terms – to be addressed with "a healthy regard for the federal policy favoring arbitration." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Santana v. A.L. Recovery, LLC*, No. 18-16, 2018 U.S. Dist. LEXIS 138652, at *22-23 (W.D. Pa. Aug. 16, 2018) (granting third-party debt collector's motion to compel arbitration of the plaintiff's FDCPA claims, despite the court's finding that "the scope of the arbitration [was] ambiguous with respect to whether" claims against the debt collector "f[ell] within the scope of the [a]rbitration [p]rovision[,] . . . [because] the court's inquiry into the scope of the [a]rbitration [p]rovision begins with the presumption of arbitrability.").

Accordingly, Plaintiff fails to refute CSI's ability to invoke arbitration as a third party beneficiary under the Arbitration Agreement, which unequivocally expresses the parties' intent to benefit a broad class of third parties that are "connected with" Plaintiff or Citibank. *See* Montgomery Decl., Ex. 1 at p. 8.

**b.      Plaintiff Cannot Refute CSI's Ability to Enforce the Arbitration Agreement as Citibank's Agent**

Plaintiff argues that CSI cannot compel arbitration as Citibank's agent under the "plain language of the arbitration agreement," which "explicitly provides that only Citibank or Plaintiff can elect arbitration." *See* Opp. at p. 31.   This demonstrates a fundamental misunderstanding of agency enforcement, which allows an agent to enforce an agreement executed by its principal irrespective – or in spite – of the terms of the underlying contract.  Indeed, this principle permits an agent to step into the shoes of the principle where the claims against the agent relate to: (1) conduct or behavior committed in its capacity as agent, and (2) the contract containing the arbitration clause.  *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 916 (N.D. Cal. 2011); *see also Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 815 (S.D. 2002) ("in accordance with the Federal Arbitration Act, the Federal courts have consistently afforded agents the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to . . . their capacities as agents . . . .").  Thus, Plaintiff's continued reliance on the Arbitration Agreement's definitions is misplaced, and by failing to address CSI's argument, he effectively concedes CSI can compel arbitration as Citibank's agent.

Moreover, Plaintiff's suggestion that a principal-agent relationship cannot be established without producing a "contract between [CSI] and Citibank" fails for the

reasons discussed in CSI's opening brief,[5] which relies on principles of implied –
rather than express – agency.  *See Aimonetto v. Rapid Gas, Inc.*, 126 N.W.2d 116,
120 (S.D. 1964) (implied authority exists where the parties' actions establish that
the agent had actual or apparent authority to act on the principal's behalf).  Here,
CSI's conduct, as alleged by Plaintiff and as evidenced by the collection letter
attached to the Complaint, manifests CSI's authority to negotiate on behalf of, and
bind, Citibank to settlement agreements, for the purpose of collecting payments to
Citibank.  *See* Compl. at Ex. A; *see also Columbia Broad. Sys., Inc. v. Stokely-Van
Camp, Inc.*, 522 F.2d 369, 375-76 (2d Cir. 1975) ("As to authorization to contract,
it may be inferred from authority to conduct a transaction if the making of the
contract is incidental thereto, usually accompanies such a transaction or is
reasonably necessary to accomplish it.") (citing Restatement (Second) of Agency §
50).[6]  The letter was clearly sent on behalf of Citibank, as it instructed Plaintiff to
make checks payable to Citibank.  *See* Compl. at Ex. A.  Furthermore, it noted
CSI's authority to negotiate on Citibank's behalf by stating if Plaintiff was "unable

---

[5]    Plaintiff also did not pursue any discovery on this issue, despite the
fact that CSI relied on the same argument in its First Motion.

[6]    *See also* Restatement (Second) of Agency § 12 ("An agent or apparent agent
holds a power to alter the legal relations between the principal and third persons
and between the principal and himself."); *Id.* at cmt. a (the power to alter legal
relations demotes the requisite legal power to: (1) bind the principal in contract
with a third person . . . ."

to pay the offered settlement amount by th[e] due date," he should contact CSI to discuss "alternative payment options."  *See id.*  This demonstrates that CSI's role was not limited merely to "br[inging] the parties together," but rather, that it had the authority to "negotiate and consummate" a settlement agreement and payment between Citibank and Plaintiff.  *See Royal Mortg. Corp. v. Montague*, 41 S.W.3d 721, 733 (Tex. App. 2001) (plaintiff was acting as an agent because it "had authority to negotiate and enter into contracts").

The Court should also reject Plaintiff's assertion that "CSI has not alleged that it bears any 'significant relationship to Citibank,'" which erroneously invokes elements not relevant to agency enforcement.  *See* Opp. at p. 32 (quoting Third Circuit case addressing the "three part test … for determining whether a non-signatory … should be bound by [a] forum selection clause").  Even if the Court interprets Plaintiff's argument as a challenge to the connection between his claims and the Card Agreement, based on his reference to *Orn*, it still fails to refute CSI's ability to compel arbitration because *Orn* was also wrongly decided (and is currently on appeal.

Like Plaintiff, *Orn* erroneously relies on an element taken from another third-party enforcement principal.  Specifically, *Orn* found that while the defendant-debt collector established a principal-agent relationship, it could not compel arbitration because plaintiff's claim was "not related to any underlying

obligation in the contract." *Orn*, 2018 U.S. Dist. LEXIS 199304, at *9. However, this conclusion is based on the court's conflation of agency enforcement with equitable estoppel, *see id.* (citing *Mims v. Glob. Credit & Collection Corp.*, 803 F.Supp.2d 1349, 1358 (S.D. Fla. 2011), which requires that claims be "intertwined" with the agreement creating the arbitration agreement – a heightened level of "rel[iance] on the terms of the written agreement" that does not apply to the principal of agency enforcement. *See Mims*, 803 F. Supp. 2d at 1357-58. Moreover, if accepted, the holding in *Orn* would effectively eradicate the principal of agency enforcement, as it would bar agents from enforcing all but contract based claims – which generally cannot be brought in the first place. *See, e.g., Freeman v. Liu*, 112 F.R.D. 35, 39 (N.D. Ill. 1986) (noting that an agent is generally only personally liable if it "makes contract with third party on behalf of undisclosed or partially disclosed principal). Thus, the holding in *Orn* is clearly erroneous, and it offers no persuasive authority herein.

For these reasons, and as discussed in CSI's opening brief, Plaintiff cannot refute CSI's right to compel arbitration as Citibank's agent.

## III.   <u>CONCLUSION</u>

For the reasons stated herein, as well as in CSI's opening memorandum, CSI requests that the Motion to Compel Arbitration on an Individual Basis and Stay Proceedings be granted.

Dated:  March 18, 2019

/s/*Daniel C. Fanaselle*
Daniel JT McKenna
Daniel C. Fanaselle
1735 Market Street, 51st Floor
Philadelphia, PA 19103
T:  215.665.8500
F:  215.864.8999

*Attorneys for Defendant, Client Services, Inc.*