## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NESTOR SAROZA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:17-cv-03429 |
| CLIENT SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
T: 215.665.8500
F: 215.864.8999

*Attorneys for Defendant Client
Services, Inc.*

On the Brief:

Daniel JT McKenna, Esq.
Daniel C. Fanaselle, Esq.

## I.    <u>INTRODUCTION</u>

Pursuant to the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b)(2), and Local Rule 72.3, defendant Client Services, Inc. ("CSI") respectfully submits this objection to the Report and Recommendation of United States Magistrate Judge Steven C. Mannion (the "Report"), which recommended denial of CSI's renewed motion to compel arbitration and stay proceedings (CSI's "Motion").  *See* ECF 50.  This recommendation is based on the Report's finding that CSI failed to "establish [a] presumption of receipt" of the applicable card member agreement containing the arbitration provision, which, it concluded, left "a genuine issue of fact" in dispute as to whether the Plaintiff agreed to arbitrate.  *See* Report, ECF 50 at p. 7.  In reaching this conclusion, the Court discounted Plaintiff's admission regarding his receipt of the credit card, and resorted to a tenuous semantic analysis, which applied distinct and divergent meanings to the use of the words "provided," "sent," and "mailed" in Citibank's declaration in support of the Motion.

The Report's conclusion, and the justification offered in support thereof, are improper, as both are contradicted by the evidence, and are contrary to the text of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, and the standard adopted in the Third Circuit.  Indeed, the record reflects substantial evidence regarding the making of the arbitration agreement, including: (1) Citibank's

declaration establishing that the credit card at issue was mailed to Plaintiff; (2) Citibank's declaration establishing that the applicable card member agreement was provided with the credit card; (3) Citibank's declaration establishing that the credit card and included card member agreement were not returned; (4) Citibank's declaration establishing that the credit card was used by Plaintiff to make purchases; and (5) Plaintiff's testimony that he received the credit card that was mailed to him.  In contrast, Plaintiff relied on entirely on his unsubstantiated claim that he did not recall receiving the card member agreement, and offered no facts to support his position, or to refute CSI's aforementioned evidence.

Taken together, the record conclusively shows that Plaintiff received both the credit card and the card member agreement.  Indeed, because Plaintiff admitted receiving the credit card, and because the card member agreement was sent with the credit card, in accordance with Citibank's normal business practice, Plaintiff indisputably also received the card member agreement.  The Report, however, found the use of the word "sent" instead of "mailed" in Citibank's declaration (when referring to the card member agreement being with the credit card that was mailed) somehow created a disputed issue as to whether the card member agreement was also mailed.

The Report's dissection of Citibank's use of the word "sent" rather than "mailed" is arbitrary, and is refuted by the common usage of those words, and the

context in which they appear.  More importantly, and regardless of whether the Declaration was sufficient to invoke the mailbox rule, the Report erred by disregarding the effect of the evidence provided – and Plaintiff's failure to offer anything to rebut the same  and finding a genuine issue of fact based on Plaintiff's "naked assertion" that he did not "recall" receiving the card member agreement. By doing so, the Report rendered a recommendation inconsistent with the FAA and controlling law.

For these reasons, and as discussed herein, CSI asks that the Court reject the findings of the Report, and enter an order compelling Plaintiff to arbitrate his claims.

## II.   APPLICABLE LEGAL STANDARDS.

### A.   Standard Under the Magistrates Act

Objections to a magistrate judge's proposed findings are governed by the Magistrates Act, 28 U.S.C. § 636, which provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b); *see also EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) ("If a party objects timely to a magistrate judge's report and recommendation, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  Under this

standard, the district court is permitted to make a de novo determination of the matter at issue, may accept, reject or modify, in whole or in part, the findings and recommendations, and "may also receive further evidence."   28 U.S.C. § 636(b)(1)(B) & (C); Fed. R. Civ. P.  72 (b), and L. Civ. R. 72.1c(2); *see also Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("Under [636](b)(1)(B) and (C), the district court is permitted to make a de novo determination of proposed findings and recommendations, may accept, reject or modify, in whole or in part, the findings and recommendations, and 'may also receive further evidence.'"); *Taberer v. Armstrong World Industries, Inc.*, 954 F.2d 888, 904 n.26 (3d Cir. 1992) ("The district judge's offer to allow [party] to supplement the record is also consistent with section 636(b)(1)(C), which allows the district judge to 'receive further evidence.'").

## B.  <u>Standard Applied to a Motion to Compel Arbitration.</u>

Motions to compel arbitration are governed by section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*   *See* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . .").  The FAA restricts the court's role in these proceedings to determining whether a valid agreement to arbitrate exists between the parties, and

directs courts to compel arbitration where: (1) "a valid agreement to arbitrate exists"; and (2) "the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *see also Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997) ("the district court is not to consider the merits of the claims giving rise to the controversy, but is only to determine . . . whether there is a valid agreement to arbitrate."). Moreover, while any issues regarding the parties' agreement to arbitrate are within the province of the court, its analysis must be conducted in accordance with the FAA's "liberal federal policy favoring arbitration agreements," which requires any "questions of arbitrability [to] be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Arbitration should be ordered as a matter of law where there is "no genuine issue of fact concerning the formation of the agreement." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980).

Where a party identifies sufficient facts to create an issue of fact regarding the formation of the agreement to arbitrate, the FAA requires courts to hold a hearing or trial on the issue of arbitrability. *See* 9 U.S.C. § 4. But as Section 4 of the FAA makes clear, such proceedings are only appropriate "[i]f the making of the arbitration agreement . . . be in issue." *Id.* And as courts in the Third Circuit

have consistently held, "[a] naked assertion … by a party to a contract that it did not intend to be bound by the terms thereof is insufficient to place in issue 'the making of the arbitration agreement' for the purposes of Section 4 of the Federal Arbitration Act." *Par-Knit Mills,* 636 F.2d at 55.  Rather, the party opposing the motion must, at least, provide "[a]n unequivocal denial that the agreement had been made, accompanied by supporting affidavits." *Id.*

## III.   ARGUMENT

### A.   The Report Erred by Ignoring CSI's Unrefuted Evidence

#### 1.   The Montgomery Declaration Clearly Establishes that the Presumption Under the Mailbox Rule Applies.

The declaration provided by Citibank employee Terri Montgomery clearly proved that Plaintiff received the card member agreement and is, therefore, bound by its terms.  Specifically, and without limitation, Ms. Montgomery testified that:

8.   Consistent with Citibank's regular practice, the card member agreement was provided to Plaintiff, along with the plastic credit card for the Account, when the Account was opened. Citibank's records show that the card member agreement and plastic credit card were sent to Plaintiff at 552 29th Street, Union City, NJ 07087 ("Plaintiff's Address"), which is the address Plaintiff provided at the time he applied for the Account.

9.   As part of its routine practice, if mail sent to a customer such as the Plaintiff is returned undeliverable, then it is noted in the Account records. There is no record of any items sent to the Plaintiff on the Account as being returned as undeliverable.

10.   If the card member agreement had been returned to Citibank, it would have been noted in the Account records. There is no

record that the card member agreement was returned to Citibank as undeliverable.

11.     Moreover, if Plaintiff had not received the card member agreement, he would not have received the plastic card that allowed him to make charges on the Account. There were many charges on the Account, which confirms that Plaintiff received the plastic credit card and the card member agreement.

*See* Montgomery Decl., CITI000002-CITI000003at ¶¶ 8-11.

Moreover, Plaintiff testified that he received the credit card in the mail:

Q:     Do you remember when you received the credit card?

A      I don't remember. I must have gotten it because I used it.

Q      But you don't member the actual plastic credit card . . . how you received it?

A      Through a letter, an envelope.

Q      Was that sent to your address?

A      Yes

*See* Saroza Dep. ECF 40-4, Ex, 3 at p. 23:4-12.

Although Plaintiff did not (and could not) offer any facts to refute Ms. Montgomery's testimony that the card member agreement was with the credit card he received in the mail, the Report found it to be insufficient based on its use of the word "sent" (rather than "mailed"). Specifically, the Report notes that Ms. Montgomery testified that Citibank "provided" and "sent" (rather than "mailed") the card member agreement, while elsewhere stating that Plaintiff's "Account Statements … were mailed to his address." *See* Report at p. 6. This, the Report

held, is significant because "[w]ords have meaning," such that "Ms. Montgomery had some reason to choose "sent" and "provided" over mailed." *Id.* at p. 7.[1]

The Report's findings are refuted by the plain language of the Declaration taken as a whole, along with the commonly accepted usage of the words "sent" and "mail." Indeed, immediately after explaining that the card member agreement was sent with the credit card, Ms. Montgomery explains what happens "if mail *sent* to a customer is returned undeliverable." *See* Montgomery Decl. at ¶ 10 (emphasis added); *see also id.* at ¶¶ 13, 16 (noting that "all Account statements were *sent* to Plaintiff's Address," and that "Plaintiff received and responded to correspondence from Citibank at the same address to which the card member agreement was *sent*") (emphasis added). Moreover, the Report ignores the context in which the word "sent" appears in the Declaration – juxtaposed with Plaintiff's mailing address. *See id.* at ¶ 8. Indeed the only reasonable interpretation of this statement – that the card member agreement was "sent to Plaintiff at 552 29th Street, Union City, NJ" – is that the card member agreement was *sent* by *mail*. *See Chi. Patrolmen's Fed. Credit Union v. Walker*, 2016 IL App (1st) 153414-U, ¶ 22 (Ill. App. 2016)

---

[1]    While CSI objects to the Report's interpretation of Ms. Montgomery's testimony, it is submitting herewith a Second Supplemental Declaration of Terri Montgomery, to clarify that the card member agreement and credit card were sent to Plaintiff "via United States mail." *See* Second Supp. Decl. of Terri Montgomery, attached hereto as Exhibit A, at ¶ 8. Because the Court's review is de novo, it properly can, and should consider Ms. Montgomery's supplemental testimony in adjudicating CSI's Objection. *See Haines*, 975 F.2d at 91 (noting that § 636](b)(1)(B) and (C) grants the district court authority to "receive further evidence.")

(finding "no reason to conclude that [the affiant's] use of the word 'sent' was insufficient to properly establish [the notice was] 'mailed'" where the affidavit used the term "in conjunction with defendants' full mailing address").[2]

The Report's claim that the words "sent" and "mailed" have divergent "meaning"[3] also contradicts the common definitions and usage of those words, which are widely viewed as interchangeable. *See id.* (noting that "the word 'send' is consistently interpreted as synonymous with 'mail'") (citing *Northwest Diversified, Inc. v. Mauer*, 791 N.E.2d 1162, 274 Ill. Dec. 751 (Ill. App. 2003) (interpreting the word "deliver" under the homestead exemption and finding that "[i]t does not use the terms 'send' or 'mail,' or any other term synonymous with providing notice through the mail."); Black's Law Dictionary 1568 (10th Ed. 2014) (defining "send" as, *inter alia*, "[especially] to deposit (a writing or notice) in the

---

[2]      With all due respect, it is difficult to imagine how else the Court believes the card member agreement could have been sent with the credit card or how that would impact the applicability of the mailbox rule.  If the credit card and card member agreement were sent by Federal Express or UPS, the mailbox rule would still apply.  *See Edquist v. Jackson Nat'l Life Ins. Co.*, Civil Action No. 14-14133-LTS, 2015 U.S. Dist. LEXIS 90547, at *6 (D. Mass. July 10, 2015) ("The [mailbox] rule encompasses more than mailings made with the United States Postal Service; the presumption can arise where the sender uses a private delivery service.") (citing 2 Michael H. Graham, Handbook of Federal Evidence § 301:14 (7th ed. 2014) (noting cases that have applied the presumption to Federal Express and UPS delivery services) (other citations and formatting omitted)).

[3]      The Report notes that "[w]ords have meaning," but does not suggest how the meaning of "sent" and "mailed" differ, and concludes that the Court "cannot infer that a mailing of the Card Agreement occurred."  *See* Report at p. 7.  However, the Report provides no basis for its inference that Ms. Montgomery applied a special meaning and "had some reason to choose "sent" and "provided" over mailed" – particularly where the context and common usage of the words support CSI's position.

mail")); *see also United States v. Porter*, 994 F.2d 470, 475-76 (8th Cir. 1993) (Gibson, concurring) ("In everyday life, individuals use the words [send and mail] interchangeably; only under the scrutiny of the judicial microscope could such a distinction be grounds for reversal of a conviction.") (citing The New World Dictionary (defining "send" as a verb that means 'to dispatch, convey, or transmit (a letter, message, etc.) by mail, radio, etc.," and 'Mail' as a verb that means to "send by mail, as by putting into a mailbox; post.")).

Thus, in ascribing a special meaning to the word "sent," the Report ignores the plain meaning of the word and context in which it appears, and erroneously injects confusion where it otherwise does not exist.  By explaining that the card member agreement was sent with the credit card that Plaintiff admitted he received in the mail, the Montgomery Declaration clearly invokes the mailbox rule and the Report errs in holding otherwise.[4]

### 2.     At Bottom, the Montgomery Declaration Conclusively Shows Plaintiff's Assent to the card member agreement

Even if, *arguendo*, Ms. Montgomery's testimony failed to invoke the presumption of the mailbox rule, it was certainly sufficient to establish a valid credit card agreement between Plaintiff and Citibank.  As set forth in CSI's Motion, the subject credit card account is governed by South Dakota law, which

---

[4]     Plaintiff's only opposition to the receipt of the card member agreement is his statement that he is "pretty sure that [he] never received [it]," *see* Saroza Decl., ECF 43-1 at ¶ 6, which is insufficient as a matter of Third Circuit law.

provides that "a binding contract between the card holder and the card issuer" is created through "[t]he use of an accepted credit card *or* the issuance of a credit card agreement and the expiration of thirty days … without written notice from a card holder to cancel the account …." S.D. Codified Laws § 54-11-9.

Here, it is unrefuted that Citibank sent, and Plaintiff received, the credit card, and that he proceeded to use the credit card to make purchases over the next four years. *See* Montgomery Decl., ¶¶ 8-15; *see also* Saroza Dep., p. 23:4-7 (testifying that he "must have gotten [the credit card] because [he] used it."). It is also unrefuted that, pursuant to its usual business practice, Citibank provided the card member agreement with the credit card that Plaintiff admits to having received. *See* Montgomery Decl. at ¶ 8.

Thus, even if this evidence somehow fails to establish Plaintiff's receipt of the card member agreement, the record conclusively shows a valid credit card agreement existed between Citibank and Plaintiff. *See Mounts v. Midland Funding LLC*, 257 F. Supp. 3d 930, 938-39 (E.D. Tenn. 2017). ("Mounts used the Citi Account by making purchases on the account after it was opened … [t]hese circumstances satisfy the criteria set forth in § 54-11-9 for the formation of a credit card agreement."); *see also Velez v. Credit One Bank*, No. 15-CV-4752 (PKC), 2016 U.S. Dist. LEXIS 8782, at *4 (E.D.N.Y. Jan. 25, 2016) ("[u]sing a credit card and making payments to the credit provider binds the cardholder to the terms and

conditions of card use.") (citing *Bank of Am. v. Jarczyk*, No. 00-CV-910A, 268 B.R. 17, 2001 U.S. Dist. LEXIS 16868, at *11 (W.D.N.Y. Sept. 20, 2001) ("Because it is the use of the credit card, and not the issuance, that creates an enforceable contract, each time a cardholder uses his credit card, he accepts the offer by tendering his promise to perform (*i.e.* to repay the debt upon the terms set forth in the credit card agreement)."); *Johnson v. Chase Manhattan Bank USA, N.A.*, 2 Misc. 3d 1003(A), 784 N.Y.S.2d 921 (N.Y. Sup. Ct. 2004), aff'd 13 A.D.3d 322, 786 N.Y.S.2d 302 (N.Y. App. Div. 2004) ("[W]hether or not plaintiff indicated his assent to the terms of the Cardmember Agreement, his use of the card for 12 years after receiving the Agreement provides more than sufficient evidence of his consent to its terms.")).

Thus, even if CSI did not invoke the mailbox rule, the evidence still established Plaintiff's assent to the card member agreement and, therefore, his agreement to arbitrate, and the Report erred in recommending the motion be denied.

### 3.  The Report Ignores the Significance of Plaintiff's Testimony

The Report also erred by ignoring the evidence established through Plaintiff's deposition testimony, confirming that he did, in fact, receive the credit card in the mail.  *See* Saroza Dep. at p. 23:4-12.

This testimony by Plaintiff unequivocally shows that he received the credit card by mail. Ms. Montgomery's declaration clearly establishes that the card member agreement was with the credit card when it was sent to Plaintiff. *See* Montgomery Decl. at ¶ 8. Thus, if Plaintiff received the credit card in the mail as he testified, then he necessarily also received the card member agreement in the mail.

The Report inexplicably discounts this testimony, finding it insufficient to show Plaintiff's assent to arbitration because Plaintiff did not testify that the card member agreement was also "received through the mail."

Plaintiff's testimony cannot be viewed in a vacuum. It must be viewed in context of the entire factual record, including Ms. Montgomery's testimony regarding Citibank's "regular practice" of providing the card member agreement "with the plastic credit card for the Account[] when the Account was opened," and that "if Plaintiff had not received the card member agreement, he would not have received the plastic card that allowed him to make charges on the Account." *See* Montgomery Decl. at ¶¶ 8, 11. Indeed, in light of the evidence proffered regarding Citibank's business practices, Plaintiff's admission not only strongly affirms the applicability of the mailbox rule, it also provides conclusive evidence that Plaintiff received the card member agreement. And where Plaintiff offered nothing to rebut this evidence, the Report's denial of CSI's Motion was clearly erroneous.

## B.     The Report Erred by Finding a Genuine Issue of Fact Based on Plaintiff's Naked Assertion

Finally, the Report erred by concluding that Plaintiff's naked assertion – that he was "pretty sure … [he] never received" the card member agreement – was sufficient to create a genuine issue of fact regarding the making of the arbitration agreement.  As the Third Circuit  and every other appellate court to address the issue  has held, a trial on the making of the arbitration agreement is only warranted where the party opposing arbitration identifies sufficient facts to create a genuine issue of fact.  *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980) ("A naked assertion … by a party to a contract that it did not intend to be bound by the terms thereof is insufficient to place in issue 'the making of the arbitration agreement' for the purposes of Section 4 of the Federal Arbitration Act."); *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (trial is warranted where "the party opposing arbitration can demonstrate, by means of citations to the record," that there is "a genuine dispute as to the enforceability of the arbitration clause); *see also Gipson v. Cross Country Bank*, 294 F. Supp. 2d 1251, 1255 (M.D. Ala. 2003) ("[i]n deciding whether a jury trial is warranted … the party seeking to avoid arbitration must … create a genuine issue of fact by presenting the court with enough evidence to make the denial colorable") (quoting *Wheat, First Securities, Inc. v. Green*, 993 F.2d 814, 818 (11th Cir. 1993) (formatting and additional citations omitted)); *Schnabel v.*

*Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) ("a trial is warranted only if there exists one or more genuine issues of material fact regarding whether the parties have entered into such an agreement")*; Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002) ("it is well-established that a party to [opposing] arbitration … cannot obtain a jury trial merely by demanding one … [but rather,] must "make at least some showing that under prevailing law, he would be relieved of his contractual obligations to arbitrate if his allegations proved to be true and] produce some evidence to substantiate his factual allegations.") (citing *Bhatia v. Johnston*, 818 F.2d 418, 421-22 (5th Cir. 1987) (stating that self-serving affidavits do not amount to the type of evidence required to call the "making of the arbitration" agreement into question) (internal formatting and other citations omitted)).

Here, Plaintiff offered no factual evidence to refute the evidence offered by CSI, or to support his assertion that he did not receive the card member agreement. Thus, Plaintiff's arguments constitute the type of "naked assertions" that the Third Circuit found to be insufficient to place the making of the arbitration agreement at issue. *See Par-Knit Mills*, 636 F.2d at 55.  As such, any of the evidence discussed above was sufficient to establish the existence of the arbitration agreement, and the Report's refusal to enforce the agreement was erroneous. *See Cronin v. Portfolio Recovery Assocs., LLC*, 2015 U.S. Dist. LEXIS 134370, 2015 WL 5829703, at *3

(M.D. Fla. Oct. 1, 2015) (concluding it was reasonable to infer that the terms and conditions identified in the defendant's affidavit were those the plaintiff bound himself to when he opened and used the credit card because "[o]ther than general allegations of the affidavit's deficiency and blanket denials of the existence of any agreement between the parties, [p]laintiff … offered no evidence to refute [defendant's] position.").

Accordingly, there is no material issue of fact in dispute regarding the arbitration agreement, or (as more fully discussed in CSI's Motion) that Plaintiff's claims fall within the arbitration agreement.  Therefore, the conclusion reached in the Report is contrary to law and should not be adopted by this Court.

## IV.   <u>CONCLUSION</u>

For all the foregoing reasons, and for the reasons set forth in its Motion papers, Defendant Client Services, Inc. respectfully requests that the Court set aside the Magistrate's Recommendation and Report, and enter an Order compelling arbitration of Plaintiff's claims.

Dated:  July 17, 2019                    Respectfully submitted,

                                   _/s/ *Daniel JT McKenna*_____
                                   Daniel JT McKenna
                                   Daniel C. Fanaselle
                                   **BALLARD SPAHR LLP**
                                   1735 Market Street, 51st Floor
                                   Philadelphia, PA 19103
                                   T: 215.665.8500
                                   F: 215.864.8999
                                   mckennad@ballardspahr.com
                                   fanaselled@ballardspahr.com

                                   *Counsel for Defendant, Client Services, Inc.*