**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHAMBERS OF<br>MADELINE COX ARLEO<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

February 27, 2020

VIA ECF

**LETTER ORDER**

    Re:    **Nestor Saroza v. Client Services, Inc.,**
             **Civil Action No. 17-3429**

Dear Litigants:

    **THIS MATTER** comes before the Court by way of Defendant Client Services, Inc.'s ("CSI" or "Defendant") Motion to Compel Arbitration. ECF No. 40. Plaintiff Nestor Saroza ("Saroza" or "Plaintiff") opposes the motion. ECF No. 43. On August 22, 2019, the Court vacated a report and recommendation, and directed the parties to submit further briefing on CSI's ability as a non-signatory to compel arbitration under an agreement between Plaintiff and his credit card issuer. ECF No. 57. After considering the supplemental briefs, the Motion is **DENIED**.

**I.    BACKGROUND**

    This Fair Debt Collection Practices Act ("FDCPA") action arises from a dunning letter CSI sent Plaintiff. On an unknown date, Plaintiff opened a Sears Charge Plus Account managed by Citibank, N.A. ("Citibank"). Compl. ¶ 17, ECF No. 1. Plaintiff incurred obligations on the account, and Citibank later referred it to CSI for collection. Id. ¶ 19. On May 12, 2016, CSI sent Plaintiff a dunning letter with language that Plaintiff contends was misleading, in violation of the FDCPA, 15 U.S.C. § 1692 et seq. See Compl. ¶¶ 21, 26-39. Plaintiff initiated this action on May 12, 2017, asserting a single FDCPA cause of action. Id. ¶¶ 52-58.

    CSI then sought to stay these proceedings and compel arbitration. ECF No. 6. It argued that under a Cardholder Agreement that Plaintiff received when he opened his account, he agreed to arbitrate claims against Citibank. Id. On October 31, 2018, the Court adopted a report and recommendation denying that motion to compel without prejudice, since the agreement to arbitrate could not be discerned from the face of the complaint, requiring limited discovery and the application of a different legal standard under Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 776 (3d Cir. 2013). ECF No. 34.

    CSI filed the present Motion to Compel Arbitration on January 24, 2019. ECF No. 40. Plaintiff argues this action is not subject to arbitration because CSI did not demonstrate that Plaintiff received the Cardholder Agreement containing the arbitration provision, and that even if

1

he had, as a non-signatory CSI could not compel arbitration under it. Pl. Mem. at 11, 19, ECF No. 43. On June 3, 2019, the Magistrate Judge recommended that the Motion to Compel be denied, since CSI had not provided sufficient evidence to invoke the mailbox presumption of delivery of the Card Agreement. On August 22, 2019, the Court vacated that Report and Recommendation, finding that CSI had demonstrated that Citibank had mailed the Cardholder Agreement to Plaintiff, could rely on the mailbox presumption of delivery, and that Plaintiff was bound by its terms. ECF No. 57. The Court also directed the parties to submit further briefing as to whether CSI could enforce the arbitration agreement. Id.

## II.   LEGAL STANDARD

The Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. ("FAA"), provides that "[a] written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "a strong federal policy in favor of resolving disputes through arbitration." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). See also MacDonald v. CashCall, Inc, No. 16-2781, 2017 WL 1536427, at *5 (D.N.J. Apr. 28, 2017), aff'd, 883 F.3d 220 (3d Cir. 2018).

Faced with a motion to compel arbitration, a court must perform "a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005). Principles of state law determine the "existence and scope of an agreement to arbitrate." Id.; see also Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009).

Since the agreement to arbitrate here is not discernable from the face of Plaintiff's complaint, the Court assesses this "renewed motion to compel arbitration . . . under a summary judgment standard." Guidotti, 716 F.3d at 776.

## III.   ANALYSIS

The only issue now in dispute is whether CSI, as a non-signatory to the Cardholder Agreement containing the asserted arbitration provision, may compel Plaintiff to arbitrate his FDCPA claim. Defendant advances three theories as to why it may invoke the arbitration provision: that it may do so under the agreement's plain text, as a third party beneficiary, or as Citibank's agent. None of these theories are availing.

### A.   Plain Text

Plaintiff first argues that it may enforce the arbitration provision of the Cardholder Agreement under its plain text. The Court disagrees.

The text of the Cardholder Agreement does not grant a third party like CSI the right to compel arbitration. The arbitration agreement begins on the tenth page of the Cardholder

Agreement with a bolded warning directing the cardholder to read the agreement carefully. Cardholder Ag. at 10, Montgomery Decl. Ex. 1, ECF No. 40.3. Immediately following the warning, the Agreement states "[e]ither you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called 'Claims')." Id. "You" and "we" are defined terms: you "means the person who applied to open the account" and we "means Citibank (South Dakota), N.A., the issuer of your account." Id. at 2. Thus, the text of the agreement only permits Citibank or the cardholder to initiate arbitration.

CSI argues that this provision is not conclusive, as later language in the Cardholder Agreement states that claims of other entities are subject to arbitration, and therefore that these entities should also be able to compel arbitration. Specifically, the Agreement states:

> **Whose claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

Id. at 10 (bold in original). CSI argues that its claims fall within this language because it is an entity "connected with" Citibank, and therefore its claims are subject to arbitration. CSI Mem. at 23. It argues that because this language is broad enough to encompass its claims, it is entitled to enforce the arbitration agreement against Plaintiff. Id.

Addressing an identically worded arbitration agreement, the Third Circuit found that this construction "confuses the nature of the claims covered by the arbitration clause with the question of who can compel arbitration." White v. Sunoco, Inc., 870 F.3d 257, 267 (3d Cir. 2017). In White, Sunoco sought to enforce Citibank's arbitration agreement against a cardholder who brought suit against the company for failing to honor a marketing promise to provide a five-cent per gallon discount on gas purchased with the card at Sunoco stations. Id. at 260. The district court denied Sunoco's motion to compel arbitration under Citibank's cardholder agreement, and the Third Circuit affirmed. Id. at 268. On appeal, Sunoco only challenged the district court's denial on estoppel grounds, but the court also addressed whether a "connected" entity which was not a signatory to the arbitration agreement could compel a signatory to arbitrate under it. Id. at 266. Reading the covered claims clause in context, the Third Circuit found that "[n]owhere does the agreement provide for a third party, like Sunoco, the ability to elect arbitration or to move to compel arbitration." Id. at 267-68.

Although this finding is dicta, the reasoning is persuasive. The arbitration provision of the Cardholder Agreement is unequivocal: it expressly permits only Citibank or Plaintiff to compel arbitration, but permits either of those parties to have other claims included in arbitration. Had the parties intended to permit a "connected" entity to invoke the arbitration provision, they could have inserted a clause to that effect. They plainly contemplated that claims of these parties could be subject to arbitration (by stating as much in the Agreement).

CSI's cases on this point are unpersuasive. In Gates v. Northland Group., Inc., a plaintiff brought suit against an assignee of a Citibank debt, who then sought to compel arbitration under

3

an identically-worded arbitration provision. No. 16-01492, 2017 WL 680258, at *3 (D.N.J. Feb. 21, 2017). As an assignee, that defendant could exercise Citibank's rights under the agreement.[1] CSI's remaining cases are either flatly contrary to the persuasive reasoning of the Third Circuit in White, see Clarke v. Alltran Fin., LP, No. 17-3330, 2018 WL 1036951, at *4 (E.D.N.Y. Feb. 22, 2018); Garrett v. Margolis, Pritzker, Epstein & Blatt, P.A., 861 F. Supp. 2d 724, 729 (E.D. Va. 2012), or simply fail to analyze the plain text of the arbitration provisions at issue. See Fedotov v. Peter T. Roach & Assocs., P.C., No. 03-8823, 2006 WL 692002, at *3 (S.D.N.Y. Mar. 16, 2006) (finding claims against debt collector covered without discussing distinction between covered claims and who can compel arbitration).[2] CSI cites to no authority in this District or Circuit construing either the Cardholder Agreement or similar language that would permit a non-signatory entity like CSI to compel arbitration. It has not shown that it has the right to do so under the plain text of the Cardholder Agreement.

### B.     Third Party Beneficiary

CSI next argues that even if it cannot compel arbitration under the Cardholder Agreement's plain text, it can do so as a third-party beneficiary of the Agreement. The Court disagrees.

Whether a third party to an arbitration agreement may enforce it against a signatory depends on "'whether the relevant state contract law recognizes [the particular principle] as a ground for enforcing contracts against third parties.'" Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d Cir. 2014) (quoting Arthur Andersen, 556 U.S. at 631). The Cardholder Agreement here states that it is governed by "Federal law and the law of South Dakota." Cardholder Ag. at 13.

Under South Dakota law, only intentional third-party beneficiaries may enforce contracts to which they are not a party. The contract itself must reflect an intent to expressly benefit the third party at the time it was entered, and the contracting parties must have entered the contract with the express intent of benefiting the third party. Masad v. Weber, 2009 S.D. 80, ¶ 18, 772 N.W.2d 144, 153; Jennings v. Rapid City Reg'l Hosp., Inc., 2011 S.D. 50, ¶ 10, 802 N.W.2d 918, 921; see also Orn v. Alltran Fin., L.P., 779 F. App'x 996, 998 (3d Cir. 2019).

CSI's argument as to why it qualifies as a third-party beneficiary assumes that it is entitled to enforce the arbitration agreement under its plaint text. CSI Mem. at 26-27. But as noted above, CSI has failed to demonstrate that it may enforce the agreement under its plain text. Beyond this argument, CSI offers no reason as to how the Cardholder Agreement reflects an intent to benefit

---

[1] The motion in Gates was unopposed, and the Court did not address whether a third-party non-assignee could enforce the terms of the agreement against a signatory.

[2] Fedotov's reasoning as to why the attorneys acting on behalf of the bank in that case could enforce the agreement is somewhat unclear. While the court's analysis begins with the statement that the "language is broad enough to encompass the Bank's law firm," the court cites to authority holding that a third-party beneficiary may compel arbitration. 2006 WL 692002 at *2. But even assuming that both the text of the agreement and the law firm's status as a third-party beneficiary permitted enforcement, the case failed to apply South Dakota law to make the latter determination, as required by the Supreme Court's later decision in Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009). To the extent that Fedotov's analysis rested on the firm's status as a third-party beneficiary, it is no longer good law.

CSI, and the Court can find none. CSI is therefore not a third-party beneficiary of the Cardholder Agreement under South Dakota law.

### C. Agency

Finally, CSI argues that it may enforce the arbitration agreement by virtue of its status as Citibank's agent. The Court disagrees.

CSI argues that its agency status alone is sufficient to permit enforcement of the arbitration provision, and that South Dakota law recognizes this theory of third-party contract enforcement. CSI Mem. at 29-32. The Third Circuit has directly addressed this issue. In Orn, a debt collector sought to compel arbitration as Citibank's agent under an identical arbitration provision. 779 F. App'x at 998-99. The Court of Appeals found that South Dakota law did not have a "'freestanding agency' theory of third-party enforcement" of contracts, but rather treated agency enforcement "as a species of equitable estoppel." Id. Here, CSI contends that Orn misapplied South Dakota law, which does recognize an agency theory of third-party enforcement. CSI Supp. Mem. at 6-7, ECF No. 58.

But CSI fails to show how Orn erred in its application of South Dakota law. In Orn, the Third Circuit found two circumstances under South Dakota law in which a non-signatory agent of a signatory can compel another signatory to arbitrate their claims: if (1) all claims against the nonsignatory defendants are based on alleged substantially interdependent and concerted misconduct by both the nonsignatories and a signatory; or (2) the plaintiff asserts claims arising out of the agreement containing the arbitration provision without allowing those defendants to invoke the arbitration clause. Orn, 779 F. App'x at 999 (quoting White, 870 F.3d at 264).

Applied here, this test requires CSI to demonstrate either that all of Plaintiff's claims are based on substantially interdependent or concerted misconduct by both Citibank and CSI, or that Plaintiff asserts a claim arising out of the Cardholder Agreement. Orn, 779 F. App'x at 999. As CSI has not made either showing, it cannot compel arbitration under an agency theory pursuant to South Dakota law.

### IV. CONCLUSION

As CSI has not shown that it may enforce the arbitration provision in the Cardholder Agreement under its plain text, as a third-party beneficiary, or under an agency theory, its Motion to Compel Arbitration, ECF No. 40, is **DENIED**.

                                                          SO ORDERED.

                                                     */s Madeline Cox Arleo*
                                                     **MADELINE COX ARLEO**
                                                     **UNITED STATES DISTRICT JUDGE**